**UNITED STATES of America**

v.

**Timothy ROBERTS.**

**Crim. A. No. 87–79.**

United States District Court,
D. Vermont.

July 8, 1988.

Thomas Anderson, Asst. U.S. Atty., Burlington, Vt., for U.S.

Barry Griffith, Rutland, Vt., for defendant.

## FINDINGS OF FACT AND OPINION

BILLINGS, District Judge.

By motions filed April 18, 1988 and April 25, 1988, defendant Timothy Roberts moved to suppress evidence obtained as a result of custodial interrogation conducted on March 5, 1988 and to dismiss the superseding indictment. The government opposed the motions. On June 6, 1988, this Court conducted a hearing on defendant's motions. On June 23, 1988, this Court issued its Order granting defendant's motion to suppress and granting in part defendant's motion to dismiss the superseding

indictment. This Opinion will detail the basis of that Order.

## FINDINGS OF FACT

Upon consideration of the oral evidence and exhibits presented at the hearing, the Court makes the following findings of fact. The findings are made solely for the purpose of the motions.

On October 13, 1987, members of the Vermont State Police and United States Bureau of Alcohol, Tobacco and Firearms ("ATF") arrested defendant Timothy Roberts for the attempted arson of a store in White River Junction, Vermont. On October 14, 1987, defendant went before Magistrate Jerome J. Niedermeier for an initial appearance. Magistrate Niedermeier appointed counsel on behalf of defendant. On December 8, 1987, defendant, his attorney, and the Assistant United States Attorney entered into a plea agreement. By the terms of the agreement, defendant agreed to plead guilty to three counts of arson and promised to cooperate completely, candidly, and truthfully with government investigators. The government agreed not to prosecute defendant for other specified offenses. Defendant further agreed that if he failed to comply with any provision of the agreement or made any false statement, the government would have the right to terminate the agreement and prosecute defendant for any and all offenses. (Government's exhibit 1.)

Up until February 15, 1988, defendant cooperated with and substantially assisted the government. On February 15, 1988, defendant advised Vermont State Police Detective Sergeant Richard Hall that he had discovered two bullet holes in his truck. Defendant expressed concern for his own safety and for the safety of his mother and sister. On February 16, 1988, Det. Sgt. Hall observed the bullet holes in the truck and recovered a spent .22 caliber bullet from the ground near the truck. On the same day, defendant surrendered to federal authorities pursuant to a prior agreement.

On March 4, 1988, Det. Sgt. Hall received information that defendant had shot his own truck. Det. Sgt. Hall and ATF Agent Thomas Perret obtained consent from the owner of the residence where defendant lived in Morgan, Vermont to search the barn located on the premises. Det. Sgt. Hall and Agent Perret searched the barn and found a .22 caliber Jennings semi-automatic pistol behind a wall.

On March 5, 1988, Det. Sgt. Hall and Agent Perret transported defendant from the St. Johnsbury Community Correctional Center to the Vermont State Police barracks. Prior to interviewing defendant, they presented him with a *Miranda* statement of rights form. Defendant immediately asked the officers why they were giving him the form at that time. Agent Perret replied that it had been a long time since advising defendant of his rights and they wanted to question defendant about some old things and some new things. They did not, however, specifically detail their concerns about the truck shooting incident. Defendant read and executed the form. (Government's exhibit 2.)

Det. Sgt. Hall and Agent Perret then asked defendant whether he had shot his own truck. Initially he denied doing so. Det. Sgt. Hall and Agent Perret confronted defendant with the Jennings pistol and he did not reply. At that point, Det. Sgt. Hall and Agent Perret started to leave the barracks but defendant remained seated. Defendant asked what they wanted him to say and Agent Perret answered that he wanted defendant to tell him the truth or not to say anything at all. Defendant stated that he had shot his own truck in order to increase his chances of entering the witness protection program.

On March 11, 1988, the government advised defendant that he had breached the plea agreement and, therefore, pursuant to its terms, the government was terminating the agreement. On March 17, 1988, a grand jury returned a superseding indictment charging defendant with five counts of arson and one count of receipt of a firearm by a felon. The five arsons charged are those referenced in the plea agreement.

## DISCUSSION

*Motion to Suppress*

Defendant contends that any statements he made on March 5, 1988 must be suppressed because he had not effectively waived his right to the assistance of counsel during interrogation. The government submits that defendant validly waived his right to counsel.

The Sixth Amendment right to counsel attaches when "judicial proceedings have been initiated against [an individual] —'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 1239, 51 L.Ed.2d 424 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972)). In the present case, defendant was charged with attempted arson in a complaint filed October 14, 1987.[1] The same day, defendant appeared before the magistrate for an initial appearance. Defendant's Sixth Amendment right to counsel attached upon the filing of the complaint and defendant invoked that right by requesting counsel at the initial appearance.

Having determined that defendant invoked his Sixth Amendment right to counsel at the initial appearance, the Court must determine whether that invocation remained in effect at the subsequent interrogation concerning the shooting of defendant's truck. "The Sixth Amendment guarantees the accused, at least after the initiation of formal charges, the right to rely on counsel as a 'medium' between him and the State." *Maine v. Moulton*, 474 U.S. 159, 176, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985). The right to counsel vests when an individual becomes an accused. *Escobedo v. Illinois*, 378 U.S. 478, 485, 84 S.Ct. 1758, 1762, 12 L.Ed.2d 977 (1964). Once the Sixth Amendment right to counsel attaches, "government efforts to elicit information from the accused, including interrogation, represent 'critical stages' at which

the Sixth Amendment applies." *Michigan v. Jackson*, 475 U.S. 625, 630, 106 S.Ct. 1404, 1408, 89 L.Ed.2d 631 (1986). The right to counsel continues until the individual is no longer the "accused", by virtue of conviction, acquittal, or dismissal of the charges. *Espinoza v. Fairman*, 813 F.2d 117, 125 (7th Cir.1987).

In the present case, defendant's Sixth Amendment right to counsel vested when he was charged in the complaint with attempted arson. At that point, Roberts became the accused and was entitled to the assistance of counsel at all critical stages in the prosecution, including custodial interrogation. Defendant's Sixth Amendment right to counsel was still in effect at the time Det. Sgt. Hall and Agent Perret interrogated him about the shooting of his truck because he was still the accused; the Court had not yet decided to accept the plea agreement, and the prosecution against him had not yet resulted in a conviction, acquittal, or dismissal of the charges. *Id.*

Having determined that defendant's Sixth Amendment right to counsel remained in effect at the subsequent interrogation concerning the shooting of his truck, the Court must determine whether defendant validly waived his right to counsel. Pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), an individual may waive the right to the assistance of counsel during custodial interrogation provided the waiver is made voluntarily, knowingly, and intelligently.

The United States Supreme Court has indicated that once an individual asks for counsel, additional safeguards are necessary to protect the individual's Fifth Amendment right to counsel. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards*, the Supreme Court held "that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interro-

---

1. On November 5, 1987, a grand jury returned an indictment charging defendant with the October 13, 1987 attempted arson. On February 3, 1988, the government filed an information charging defendant with two additional counts of arson.

gation even if he has been advised of his rights." *Id.* at 484–85, 101 S.Ct. at 1884–85.

A complaint charged Edwards with robbery, burglary, and first-degree murder. During interrogation following his arrest, Edwards requested counsel, thereby invoking his Fifth Amendment right, and the interrogation ceased. On the following day, before counsel was made available to Edwards, the officers interrogating Edwards advised him of his *Miranda* rights and Edwards stated that he would talk to them. The Supreme Court found that Edwards had not validly waived his right to counsel because once he had expressed his desire to deal with the police only through counsel, he could waive that right only by his own initiation of further communication with the police. Thus, *Edwards* established a bright-line rule prohibiting reinterrogation about an offense once an accused has invoked the right to counsel unless the accused initiates further communication.

*Michigan v. Jackson*, 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), applied the *Edwards* bright-line rule to the Sixth Amendment right to counsel. Jackson requested counsel at his arraignment on murder charges. Before having an opportunity to consult with counsel, police officers advised Jackson of his *Miranda* rights, Jackson agreed to talk to the police without counsel present, and the police obtained his confession. The United States Supreme Court held that "if police initiate interrogation after a defendant's assertion, at arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.* at 636, 106 S.Ct. 1411.

The Supreme Court reasoned that although the *Edwards* rule flowed from the Fifth Amendment right to counsel, "the reasons for prohibiting the interrogation of an uncounseled prisoner who has asked for the help of a lawyer are even stronger after he has been formally charged with an offense than before." *Id.* at 631, 106 S.Ct. at 1408. Addressing the government's contention that the *Edwards* rule should not apply to a Sixth Amendment claim because of differences in the legal principles underlying the Fifth and Sixth Amendments, the Supreme Court concluded that "the Sixth Amendment right to counsel at a postarraignment interrogation requires at least as much protection as the Fifth Amendment right to counsel at any custodial interrogation." *Id.* at 632, 106 S.Ct. at 1409.

Next, applying the established standard of *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938), that every reasonable presumption against a waiver of fundamental constitutional rights must be made, the Supreme Court explained that an accused's request for the appointment of counsel at arraignment should not be construed to apply only to representation in formal legal proceedings. *Jackson*, 475 U.S. at 633, 106 S.Ct. at 1409. Rather, the Court stated that once a defendant had invoked the Sixth Amendment right to counsel, the Court would "presume that the defendant requests the lawyer's services at every critical stage of the prosecution." *Id.*

Finding the assertion of the right to counsel to be as significant when based on the Sixth Amendment as when based on the Fifth Amendment, the Court concluded that the *Edwards* bright-line rule applied with equal force in the Sixth Amendment context. Accordingly, the Court found that "[j]ust as written waivers are insufficient to justify police-initiated interrogations after the request for counsel in a Fifth Amendment analysis, so too they are insufficient to justify police-initiated interrogations after the request for counsel in a Sixth Amendment analysis." *Id.* at 635, 106 S.Ct. at 1410.

In *Arizona v. Roberson*, —— U.S. ——, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the United States Supreme Court again considered the parameters of the *Edwards* rule. After arresting Roberson at the scene of a burglary, the arresting officer advised Roberson of his *Miranda* rights. Roberson requested a lawyer and the police did not interrogate him. Three days later another police officer, who was not aware that Roberson had previously requested a

lawyer, advised him of his *Miranda* rights and obtained an incriminating statement from Roberson concerning a different burglary. The Supreme Court held that the bright-line rule of *Edwards* applies when the police-initiated interrogation following a suspect's request for counsel occurs in the context of a separate investigation. *Id.* 108 S.Ct. at 2097. Agreeing with the Arizona Supreme Court, the Supreme Court stated that there is no legal significance for Fifth Amendment purposes to the factual distinction of questioning the accused about the *same* offense after a request for counsel or questioning the accused about an *unrelated* offense. *Id.,* 108 S.Ct. at 2096 (emphasis added) (citing *State v. Routhier,* 137 Ariz. 90, 97, 669 P.2d 68, 75 (1983), *cert. denied,* 464 U.S. 1073, 104 S.Ct. 984, 79 L.Ed.2d 221 (1984)).

■ Thus, the Sixth Amendment right to counsel parallels the Fifth Amendment right to counsel in two ways:

1) Before the *Edwards* rule will bar police-initiated questioning, the right to counsel must be invoked; and

2) Before the right to counsel is invoked, *Miranda* warnings are sufficient to inform the accused of his right to counsel and to obtain a valid waiver of that right.

The United States Supreme Court has "repeatedly emphasized the virtues of a bright-line rule in cases following *Edwards* as well as *Miranda." Roberson,* 108 S.Ct. at 2098 (citations omitted). Logically, in view of the Supreme Court's analysis of the analogous concerns and similar functions of the right to counsel in the Fifth and Sixth Amendment contexts, the parameters of the *Edwards* rule when applied in the Sixth Amendment context should be at least as broad as when applied in the Fifth Amendment context. This conclusion is strongly supported by the Supreme Court's determination that "the Sixth Amendment right to counsel at postarraignment interrogation requires at least as much protection as the Fifth Amendment right to counsel at any custodial interrogation." *Jackson,* 475 U.S. at 632, 106 S.Ct. at 1409.

This analysis compels the conclusion that once an accused has invoked the Sixth Amendment right to counsel, the bright-line rule of *Edwards* prohibits police-initiated interrogation about either the same offense or an unrelated offense and any waiver of the right to counsel for that police-initiated interrogation is invalid.

As discussed above, the *Edwards* rule applies to both the Fifth and Sixth Amendment right to counsel. In the recent case of *Patterson v. Illinois,* —— U.S. ——, 108 S.Ct. 2389, 101 L.Ed.2d 261 (1988), the United States Supreme Court again emphasized the parallels between the Fifth and Sixth Amendment right to counsel. *Patterson* was apprehended in connection with a gang fight that resulted in a murder. Following advice of his *Miranda* rights, he agreed to answer police questions and denied knowing anything about the murder. *Patterson* was held in custody, the murder investigation continued, and two days later a grand jury indicted him for murder. The police officer who had questioned Patterson earlier told him he had been indicted and was being transferred to the county jail. Patterson initiated a conversation about the crime. The officer interrupted him and advised him of his *Miranda* rights. Patterson then signed a waiver form and made incriminating statements concerning the murder.

Patterson argued, *inter alia,* that because his Sixth Amendment right to counsel arose with his indictment, the police were barred under *Michigan v. Jackson* from initiating a meeting with him. The Supreme Court agreed that his Sixth Amendment right to counsel arose with his indictment. The Court did not agree, however, that *Jackson* barred a police-initiated meeting. Emphasizing the similarities between the Fifth and Sixth Amendment right to counsel, the Court underscored the requirement that an accused actually invoke the right to counsel.

■ In the Fifth Amendment context, before a preindictment suspect facing interrogation invokes the right to counsel, the right is in existence and available for exercise. *Edwards* will not, however, bar police-initiated interrogation until the suspect

requests the assistance of counsel. Similarly, once Patterson was indicted, his Sixth Amendment right to counsel was in existence and available for him to exercise. He did not, however, indicate that he wanted to exercise the right. For that reason, the *Edwards* rule, as applied to the Sixth Amendment context by *Jackson,* did not bar the police-initiated meeting.

Patterson also contended that questioning him without counsel present violated the Sixth Amendment because he did not validly waive his right to the assistance of counsel. The Court found that because Patterson had not invoked his right to counsel, the *Miranda* warnings sufficiently informed Patterson of his right to have counsel present during the questioning and the consequences of a decision to waive his Sixth Amendment right during post-indictment questioning.

Thus, in *Patterson,* the Supreme Court again discussed the parallels between the right to counsel in the Fifth and Sixth Amendment context and emphasized that police-initiated interrogation will be barred only after the right to counsel is invoked. The result in *Patterson* does not change the analysis of the parameters of the *Edwards* rule.

■ In the present case, defendant Timothy Roberts requested counsel at his initial appearance. By doing so, he invoked his Sixth Amendment right to counsel. At the time Det. Sgt. Hall and Agent Perret questioned Roberts about the shooting of his truck, his Sixth Amendment right to counsel remained in effect because he was still the accused; the Court had not yet decided to accept the plea agreement and the prosecution against him had not yet resulted in a conviction, acquittal, or dismissal of the charges.

In accordance with the analysis discussed above, once Roberts had invoked his Sixth Amendment right to counsel, the bright-line rule of *Edwards* barred interrogation initiated by Det. Sgt. Hall and Agent Perret and any waiver of defendant's right to counsel for that interrogation is invalid. After invoking his right to counsel, Roberts could waive that right only if he initiated the conversation with Det. Sgt. Hall and Agent Perret. The remaining issue is whether this analysis is changed by the existence of the plea agreement.

■ Under the terms of the plea agreement defendant agreed to cooperate completely, candidly, and truthfully with government investigators by providing all information in his possession relating to any criminal matters of which he had knowledge. In addition, defendant agreed to assist government investigators in their continuing investigation of the arsons specified in the plea agreement by wearing a recording device and communicating with specified individuals concerning these arsons. In return, the government agreed not to prosecute defendant for several offenses specifically set out in the agreement. The offenses to which defendant agreed to plead guilty and the offenses for which the government agreed not to prosecute defendant involved arson.

"Plea bargains are subject to contract law principles insofar as their application will insure the defendant what is reasonably due him." *United States v. Baldacchino,* 762 F.2d 170, 179 (1st Cir.1985). Paragraphs 3 and 4 of the plea agreement sets out those things defendant agrees to do to cooperate with government investigators.[2] Defendant agrees to provide

**2.** (3) Timothy Roberts agrees that he will cooperate completely, candidly, and truthfully with all federal and Vermont State Police investigators by providing any and all information in his possession relating directly or indirectly to any and all criminal activities or other matters of which he has knowledge. Timothy Roberts will provide to all federal and State Police investigators any and all documents, records, writings, or tangible objects or materials of any kind in his possession or under his care, custody or control relating directly or indirectly to any criminal activity or related matter. Timothy Roberts agrees that he will testify under oath, completely, candidly and truthfully before any Federal Grand Jury within the District of Vermont or elsewhere and in any and all trials or other proceedings in the District of Vermont or elsewhere involving matters referred to in this agreement.

(4) Timothy Roberts also agrees to assist federal and state investigators in their continuing investigation of the above mentioned arsons by

government investigators with all information in his possession relating to "all criminal activities or other matters of which he has knowledge." Defendant also agrees to testify before a federal grand jury and in any trial "involving matters referred to in this agreement." Finally, defendant agrees to wear a recording device while talking to three named individuals regarding arsons that are part of the government's "continuing investigation of the above mentioned arsons."

Pursuant to Paragraph 2 of the plea agreement, the government agrees not to prosecute defendant for several specifically named offenses. With the exception of defendant's promise to provide all information in his possession relating to all criminal matters of which he has knowledge, all references in the plea agreement to offenses charged, offenses to which defendant agrees to plead guilty, offenses for which the government agrees not to prosecute defendant, and matters on which defendant agrees to testify and wear a recording device concern arson offenses and investigations.

Although not specifically stated in the agreement, defendant and his counsel apparently agreed that defendant would meet with government investigators concerning matters referred to in the plea agreement, without the presence of his counsel. Prior to February 15, 1988, defendant did meet with government investigators on numerous occasions without the assistance of his counsel. In addition, it is reasonable to conclude that on the occasions when defendant wore a recording device and communicated with individuals at the request of the government, the parties to the plea agreement contemplated that he would do so in the absence of his counsel.

Thus, under the terms of plea agreement, defendant agreed to waive his right to have counsel present on occasions when he was cooperating with the government concerning matters contemplated within the scope of the plea agreement. There is no basis, however, for concluding that defendant's waiver extended beyond occasions when he was cooperating with the ongoing government investigation referred to in the agreement.

Once Det. Sgt. Hall and Agent Perret learned that defendant might not have been truthful in reporting the circumstances surrounding the shooting of his truck, defendant's responses to questions concerning the incident directly impacted the pending indictment against him. The questions about this incident concerned a matter which cannot reasonably be said to fall within the scope of defendant's promise to cooperate with government investigators. First, it concerned a matter about which defendant had no knowledge at the time he entered into the plea agreement. Second, it was not the intention of the parties that the information defendant provided to aid the government in its ongoing investigation would be used against him.

The relationship between Det. Sgt. Hall and Agent Perret and defendant became an adversarial one when their questions concerned matters outside the scope of the plea agreement. Because defendant's waiver of his right to the assistance of counsel was limited to those occasions when he was cooperating with the government concerning matters contemplated within the scope of the plea agreement, he had not waived his right to counsel when dealing with the government in an adversarial context.

Thus, defendant's previously invoked right to counsel remained in effect when Det. Sgt. Hall and Agent Perret initiated questioning on March 5, 1988 concerning the shooting of defendant's truck because the limited waiver under the plea agreement did not extend to such adversarial situations. Therefore, because defendant

---

wearing a recording device and communicating with William Standish, Malcom Standish, and Reginald Riendeau concerning these arsons. Timothy Roberts understands that he is not to contact either William Standish, Malcom Standish, or Reginald Riendeau without obtaining the prior approval of the United States. If William Standish, Malcom Standish or Reginald Riendeau contact Timothy Roberts, he understands that he must immediately contact and inform the United States.

did not initiate the conversation, nor had he waived his right to the assistance of counsel, the questioning by Det. Sgt. Hall and Agent Perret on March 5, 1988 was barred by the bright-line rule of *Edwards*. For this reason, all statements made by defendant in response to questioning outside the scope of the plea agreement by Det. Sgt. Hall and Agent Perret on March 5, 1988, including but not limited to statements relating to the shooting of defendant's truck, must be suppressed. Defendant's motion to suppress is GRANTED.

*Motion to Dismiss the Superseding Indictment*

■ Defendant moved to dismiss the superseding indictment on the ground that he substantially complied with the terms of the plea agreement, thereby triggering the government's obligation under the plea agreement not to prosecute him for offenses specified in the agreement. The government contends that by falsely reporting that his truck had been shot by an unknown assailant, defendant violated the terms of the agreement requiring him to cooperate completely, candidly, and truthfully with government investigators.

As indicated in this Court's Order dated June 23, 1988, because the Court finds that defendant's March 5, 1988 statements to Det. Sgt. Hall and Agent Perret must be suppressed, there is no evidence before the Court to establish that defendant breached the plea agreement. For this reason, the plea agreement remains in full force and both parties are obligated to fulfill their obligations under the agreement.

Defendant's motion to dismiss the superseding indictment is GRANTED IN PART. To the extent the superseding indictment is inconsistent with the plea agreement, the superseding indictment is DISMISSED. Specifically, Counts 1 through 4 of the superseding indictment are DISMISSED. Count 5 of the superseding indictment is NOT DISMISSED because it is the same offense charged in the original one count indictment which is still pending under the plea agreement. Count 6 is NOT DISMISSED because it charges an offense relating to the shooting of defendant's truck and under the terms of the plea agreement the government is free to prosecute defendant on this charge.