**Horace BUTLER, Petitioner–Appellant,**

v.

**James AIKEN, Warden, Central Correctional Institute; Travis Medlock, Attorney General, State of South Carolina, Respondents–Appellees.**

No. 87–4004.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 7, 1988.

Decided May 6, 1988.

Dale Thomas Cobb, Jr. (Belk, Howard, Cobb & Chandler, P.A., on brief). for petitioner-appellant.

Donald John Zelenka, Chief Deputy Atty. Gen., for respondents-appellees.

Before RUSSELL, HALL, and CHAPMAN, Circuit Judges.

K.K. HALL, Circuit Judge:

Horace Butler, a South Carolina inmate currently awaiting execution for the crime of murder, appeals an order of the district court dismissing his petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. We affirm.

I.

Butler was tried by a South Carolina state court in 1981 for the 1980 murder of Pamela Lane. According to the facts de-

veloped at trial, Lane, a clerk at a convenience store north of Charleston, South Carolina, was last seen alive when she left her place of employment at approximately 10:30 p.m. on July 17, 1980. At that time, she was riding a new moped that had been delivered to her earlier that evening. She never arrived at her home.

The next morning, Lane's sister reported her disappearance to the authorities. A few hours later, near a bridge, fishermen discovered a body which was subsequently identified as that of Pamela Lane. She had been shot once in the chest by a small caliber gun. The following day a local minister found a moped submerged in a pond behind his church. The moped was identified as the one Lane was riding when last seen.

On August 30, 1980, Butler was arrested on an unrelated charge of assault and battery and placed in the Charleston County Jail. Butler retained local counsel who appeared with him at a bond hearing on August 31, 1980. He was unable to make bond, however, and was returned to custody in the County Jail. Butler's attorney would later contend in state post-conviction proceedings that he directed police officers not to question Butler further. The officers, however, testified that they remembered no such instruction.

At approximately 12:15 a.m. on September 1, 1980, Butler was taken from the jail and transported to the Charleston County Police Department. He was then informed for the first time that he was under suspicion for the murder of Pamela Lane. After receiving the warnings regarding his constitutional protection against compulsory self-incrimination, as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), Butler indicated that he understood his rights and signed two separate waiver forms. At no time during the ensuing interrogation did Butler request the presence of his attorney.

Butler subsequently offered two explanations of Lane's death. In his first confession, he claimed that a friend, Larry White, had killed Lane and then sought his help in disposing of the moped. When police told Butler that they did not believe the story, he offered a second confession in which he admitted to killing Lane. According to the second confession, Butler saw Lane riding on her moped and followed her. When he blinked his automobile lights at her, she pulled off the road, hid the moped in the bushes, and voluntarily accompanied him in a drive to a nearby wooded area. Butler claimed that Lane engaged in consensual sex with him and then threatened to "cry rape" when she realized that she would be late getting home. Butler maintained that he panicked, shot Lane with a handgun in his possession, and then dumped her body off a bridge. He further claimed that Larry White helped him dispose of the moped. Butler later took police to the area where the events allegedly occurred and identified the location of Lane's death.

Butler was subsequently indicted and brought to trial on the charge of murder in the first degree. After a motion to suppress his custodial statements was denied, his two confessions to the Charleston police were introduced into evidence. The jury found him guilty of Lane's murder and, in a separate proceeding, sentenced him to death after concluding the murder had occurred while the defendant was engaged in the crime of rape.

Butler's conviction was upheld on direct appeal to the South Carolina Supreme Court in 1982. A petition for a writ of certiorari was denied by the United States Supreme Court in that same year. In 1983, Butler unsuccessfully petitioned for state post-conviction relief. That denial of relief was also affirmed by the South Carolina Supreme Court, and the United States Supreme Court again denied a petition for certiorari. Butler thereby exhausted his available state remedies.

On May 2, 1986, Butler filed the instant petition for federal habeas relief pursuant to 28 U.S.C. § 2254. The matter was referred to the United States Magistrate for

report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). On May 9, 1987, the magistrate issued his report finding no basis for granting relief to Butler. The magistrate also recommended that a motion for summary judgment presented on behalf of the respondent state officials be granted. After conducting a lengthy *de novo* review of all portions of the magistrate's report to which Butler had objected, the district court also concluded that petitioner did not merit habeas relief. Accordingly, the district court granted the respondent's motion for summary judgment and dismissed the petition. This appeal followed.

## II.

On appeal, petitioner contends that he is entitled to habeas relief because (1) his counsel in the proceedings below was constitutionally ineffective; (2) errors in the jury selection process violated his rights under the sixth and fourteenth amendments; (3) his two confessions were improperly admitted at trial; (4) the jury at his trial was improperly instructed; (5) the prosecution's use of rape as an aggravating circumstance justifying the death penalty was improper; and (6) the state of South Carolina failed to conduct an adequate proportionality review of his case to determine whether the death penalty was the appropriate punishment. All of these contentions were exhaustively considered and rejected by the district court. We find the district court's analysis sound and persuasive in all respects save its treatment of the admissibility of petitioner's confessions. On that single issue, we conclude that some further discussion is necessary. On all other claims advanced by petitioner, however, we affirm the denial of habeas relief for the reasons expressed by the district court. *Horace Butler v. James Aiken, Warden, Central Correctional Institution, and Travis Medlock, Attorney General, State of South Carolina,* C/A No. 86–1093–3 (D.S.C. June 9, 1987).

With regard to his confessions, Butler contends that the statements elicited from him by the Charleston Police on September 1, 1980, were obtained in violation of his fifth amendment right to counsel. He concedes that the warnings mandated by *Miranda v. Arizona, supra,* were given before any interrogation concerning Lane's death occurred. He further concedes that he signed waivers in which he agreed to permit police questioning without the presence of an attorney. Petitioner argues, however, that under the "bright line" rule established in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), the undisputed invocation of his fifth amendment right to counsel when he was first arrested barred the police from initiating any further uncounseled interrogation. The waiver forms were, in petitioner's view, presumptively invalid.

█ Noting that Butler's trial had preceded the decision in *Edwards* and that the Supreme Court in *Solem v. Stumes,* 465 U.S. 638, 104 S.Ct. 1338, 79 L.Ed.2d 579 (1984), had rejected retroactive application of the rule articulated in *Edwards,* the district court summarily rejected this portion of Butler's petition. Unfortunately, the district court's failure to address this claim on the merits must be regarded as error. Although *Edwards* does not have retroactive effect, it does apply to cases pending on direct appeal at the time it was announced. *Shea v. Louisiana,* 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). Butler's appeal was in fact pending at that time. We must, therefore, consider whether Butler's interrogation did produce incriminating statements in violation of his constitutional right to counsel. We are convinced that it did not.

█ An immediate factual distinction may be drawn between Butler's interrogation and that of the criminal defendant in *Edwards.* The defendant therein was arrested on charges of first degree murder. After some preliminary questioning, he terminated the interrogation by requesting an attorney. The next morning, police officers approached the defendant and without

providing counsel, renewed questioning on the very offense on which he had previously requested counsel. In requiring suppression of the resulting confession, the Supreme Court held that when an accused has expressed a desire to deal with the police only through counsel, he "is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Edwards,* 451 U.S. at 484–85, 101 S.Ct. at 1885.

In the instant case, the Charleston police did not attempt to renew their inquiry into the assault and battery charges on which Butler had been arrested. Rather, the questioning initiated on September 1, 1980, dealt only with a hitherto uncharged offense—the murder of Pamela Lane. Not surprisingly, Butler argues on appeal that this factual distinction is irrelevant to the constitutional inquiry. Relying upon a recent decision from the Seventh Circuit, Butler contends that the correct application of *Edwards* requires that during continuous custody, the police refrain from any further questioning once an accused has invoked a right to counsel on any offense. *See United States ex rel Espinoza v. Fairman,* 813 F.2d 117 (7th Cir.1987). We are not persuaded, however, by the Seventh Circuit's dramatic extension of *Edwards.*

The fifth amendment right to counsel exists throughout the time that an accused is in police custody in contrast to the protection provided by the sixth amendment which arises only when formal proceedings are begun—when the individual becomes the accused.[1] *Escobedo v. Illinois,* 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The court in *Espinoza* reasoned that since the right to counsel extended continuously through a period of custody, the invocation of that right, as protected by *Edwards,* must be of similar duration. The

court further reasoned that requiring a crime-by-crime invocation of the fifth amendment right would be inconsistent with the decision in *Colorado v. Spring,* 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987) (waiver of fifth amendment right at the beginning of interrogation remains valid even if police questioning moves without warning from crime on which defendant was arrested to an entirely different offense). Although superficially appealing, we are convinced that the decision of the Seventh Circuit pursues a false symmetry while cutting the decision in *Edwards* away from its conceptual base.

As the Supreme Court has observed, the "prophylactic rule" adopted in *Edwards* "has only a tangential relation to truthfinding." *Solem,* 465 U.S. at 642, 104 S.Ct. at 1341. It was articulated as a reflection of the Court's belief that additional procedural safeguards were needed to protect an accused's preexisting right to request counsel during custodial interrogation. *Id.* at 645, 104 S.Ct. at 1342. Such "safeguards" by their inherent nature are a judicial response to specific and identifiable conditions that undermine the perceived integrity of the legal system. In *Miranda,* for example, the Court sought to insure that statements made by an accused while in the unavoidably coercive atmosphere of custodial interrogation could reasonably be viewed as truly voluntary. In *Edwards,* the Court's concern lay with police conduct that might badger an accused into abandoning a previously invoked right.

We fail to see how the actions of the Charleston police could fall within the intent of the Court in *Edwards.* There is no suggestion that Butler's arrest on the assault charges was a sham intended to make him available for questioning upon a more serious offense. Neither was there "reinterrogation" on the same offense, *Edwards,* 451 U.S. at 485, 101 S.Ct. at 1885,

---

**1.** On September 1, 1980, Butler unquestionably possessed a sixth amendment right to counsel with regard to the offense on which he had been arrested and denied bond. No formal charges had been filed against him in connection with

Lane's death, however, and thus no sixth amendment right had arisen in that area. For that reason, it is essentially irrelevant whether Butler's counsel in fact instructed police not to question him further.

that might have sent mixed signals regarding his continuing right to request counsel. Certainly, if Butler had been released on bond and then rearrested an hour later on murder charges, the authorities would have been permitted to engage in proper interrogation. We see no reason for a different result simply because the custody was continuous.

Properly initiated interrogation on entirely new charges does not intrude into an accused's previously invoked rights but rather offers that accused an opportunity to weigh his rights intelligently in light of changed circumstances. When, as occurred in this case, the accused then freely waives any constitutional right to counsel and provides voluntary statements of an incriminating nature, there is no justification for undermining the search for truth by suppressing those statements.

Unlike the Seventh Circuit, we perceive no conflict between this conclusion and the Supreme Court's reasoning in *Colorado v. Spring, supra.* A voluntary waiver of rights by an accused in custody conclusively demonstrates that the accused does not find the general custodial atmosphere unduly coercive. The coercive nature of the custodial environment does not change simply because the subject of the interrogation shifts. There is, therefore, as the Court in *Spring* recognized, no reason why the authorities should renew the *Miranda* warnings each time a new topic is raised in interrogation. The accused has received all of the "prophylactic" protection to which he is entitled.

The scope of the invoked fifth amendment right to counsel presents an entirely distinct conceptual issue. The question is no longer whether the authorities have met their responsibility, but whether the accused wishes to deal with the authorities personally or through counsel. Knowledge of the charges is clearly relevant in this area. Logically, the decision to seek counsel may change depending upon the accused's assessment of his circumstances. There is, therefore, no compelling reason to assume that the invocation of a right to counsel on one offense automatically applies to later charges brought to the attention of the accused. Certainly, there is no reason why the authorities cannot, at least, inquire if the accused wishes to deal with the new charges through counsel.

This Court has recently expressed serious reservations concerning the use of *per se* reversal rules in federal habeas proceedings. *Perry v. Leeke,* 832 F.2d 837 (4th Cir.), *cert. granted,* — U.S. —, 108 S.Ct. 1269, 99 L.Ed.2d 480 (1988). While a federal habeas court must ensure that a petitioner's constitutional rights have been scrupulously observed, it must also be aware of societal cost attendant to a reversal of a state criminal conviction. Fidelity to the law, of course, demands adherence to established "bright line" *per se* rules such as that articulated in *Edwards* even when they result in reversal of otherwise valid criminal convictions. Unlike the Seventh Circuit, however, we are not inclined to extend those rules to circumstances where they are unjustified and unnecessary.

### III.

We are, therefore, fully satisfied that petitioner's confessions, preceded by appropriate warnings and a voluntary waiver of fifth amendment protections, were not obtained in violation of his constitutional rights or the prophylactic rule of *Edwards v. Arizona.* Accordingly, the denial of habeas relief to petitioner is affirmed.

AFFIRMED.