[No. 56009–9.   En Banc.   October 19, 1989.]

THE STATE OF WASHINGTON, *Petitioner,* v. DEVIN R.
STEWART, *Respondent.*

*C. Danny Clem, Prosecuting Attorney,* and *Diane F. Russell* and *Ione S. George, Deputies,* for petitioner.

*Roger A. Hunko,* for respondent.

PEARSON, J.—Following a jury conviction on six counts of second degree burglary, the defendant, Devin R. Stewart, appealed. The Court of Appeals reversed the convictions on three counts and affirmed the remainder. The State sought review of the reversal and, in his answer, the defendant challenged the Court of Appeals holding affirming the remaining three convictions.

Where an in–custody defendant's Sixth Amendment right to counsel is invoked at arraignment, but the defendant has not yet met with counsel, is the defendant's Fifth Amendment right to counsel violated when police interrogate the defendant on unrelated charges, procure a *Miranda* waiver, and obtain a confession?

Analyzing the separate foundations upon which the Fifth Amendment and Sixth Amendment rights to counsel rest, we hold the defendant's Fifth Amendment right to counsel was not violated in this case. Accordingly, we reverse the decision of the Court of Appeals.

## FACTS PRESENTED

On April 30, 1985, Devin R. Stewart was arrested on a first degree robbery charge unrelated to the present action. At that time, he was taken into custody and advised of his rights by Detective English of the Bremerton Police Department. After waiving those rights, Stewart confessed to burglarizing three mobile homes on Stavis Bay Road. Those burglaries comprise counts 4 through 6 of the present action.

On May 1, 1985, Stewart was arraigned on the unrelated robbery charge and, at his request, counsel was appointed to represent him. Shortly thereafter, Stewart returned to

jail, where Detectives Wright and Fuller of the Kitsap County Sheriff's Office questioned Stewart regarding all of the burglaries presently at issue. At that time, Stewart was again advised of his rights, which he waived. Stewart again confessed to the three burglaries, comprising counts 4 through 6, and confessed to an additional three burglaries, comprising counts 1 through 3 of the present action.

On November 19, 1985, Stewart was charged by information with the present six counts of second degree burglary. Count 1 was alleged to have occurred on March 7, 1985, in which a VCR and cable television box were stolen. Count 2 was alleged to have occurred on March 26, 1985, in which $1,450 was stolen out of a purse and a refrigerator. Count 3 was alleged to have occurred between January 22 and April 11, 1985, in which sterling silver, two watches and an automotive electronic kit were stolen. Counts 4 through 6 were alleged to have occurred between April 9 and April 19, 1985, in which three television sets, a wall barometer, a chain saw, a Black & Decker blower, and a gas lantern were stolen from three separate mobile homes.

Following a CrR 3.5 hearing, the trial court held Stewart's statements to Detective English on April 30, 1985, and Detectives Wright and Fuller on May 1, 1985, were not obtained in violation of Stewart's right to counsel and, accordingly, were admissible at trial.

At trial, Detective English testified that on April 30, 1985, after reading Stewart his *Miranda* rights, Stewart confessed to the three mobile home burglaries. Subsequently, Detective Wright testified that on May 1, 1985, after reading Stewart his *Miranda* rights, Stewart not only confessed to those three burglaries, but also admitted burglarizing three other homes in Kitsap County. Detective Wright testified that following the confessions, Stewart escorted Detective Wright to those homes and specifically pointed out the three he had burglarized.

The jury convicted Stewart of all six counts of second degree burglary, and the trial court sentenced Stewart to 57

months in the custody of the Department of Corrections. Stewart appealed.

In a 2–to–1 decision, the Court of Appeals reversed Stewart's convictions on counts 1, 2, and 3, and affirmed on counts 4, 5, and 6. *State v. Stewart,* 53 Wn. App. 150, 765 P.2d 1320 (1989). The State seeks review of the reversal of Stewart's convictions on those counts and, in his answer, Stewart challenges the Court of Appeals holding affirming Stewart's convictions on counts 4 through 6.

## ANALYSIS

### I

### Fifth Amendment Right to Counsel

It is constitutionally guaranteed, "[n]o person . . . shall be compelled in any criminal case to be a witness against himself". U.S. Const. amend. 5. In *Malloy v. Hogan,* 378 U.S. 1, 12 L. Ed. 2d 653, 84 S. Ct. 1489 (1964), the Court held this privilege, incorporated via the Fourteenth Amendment, is enforceable against the states.

In *Miranda v. Arizona,* 384 U.S. 436, 444, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966), the Court fashioned a practical rule to ensure the integrity of the Fifth Amendment:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self–incrimination.

In defining one such safeguard, the Court stated that if the accused indicates "at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning." *Miranda v. Arizona,* 384 U.S. at 444–45. The motivation for the implementation of this prophylactic rule is a concern for the voluntariness of confessions procured via "interrogation practices which are likely to exert such pressure upon an individual as to disable him from making a free and rational choice." *Miranda v. Arizona,* 384 U.S. at 464–65. The Court reasoned, a state's

denial of an accused's request for counsel would undermine the ability to exercise the privilege:

> The presence of counsel, in all the cases before us today, would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege. His presence would insure that statements made in the government–established atmosphere are not the product of compulsion.

*Miranda v. Arizona,* 384 U.S. at 466.

While an accused may knowingly, voluntarily and intelligently waive the *Miranda* right to counsel, *Solem v. Stumes,* 465 U.S. 638, 647, 79 L. Ed. 2d 579, 104 S. Ct. 1338 (1984), once an accused has invoked that right, he or she will not be presumed to have subsequently waived the right merely because he or she responds to further questioning:

> [T]he Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present *during custodial interrogation,* a valid waiver of that right cannot be established by showing only that he responded to further police–initiated custodial interrogation even if he has been advised of his rights. *We further hold that an accused . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him,* unless the accused himself initiates further communication, exchanges, or conversations with the police.

(Footnote omitted. Italics ours.) *Edwards v. Arizona,* 451 U.S. 477, 484–85, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). Thus, the rule fashioned in *Edwards* effects prophylactic upon prophylactic for the protection of Fifth Amendment values. In order to ensure both the voluntariness and veracity of confessions, *Miranda* established the right to the presence of counsel when requested during custodial interrogation. Then, to protect the integrity of the *Miranda* rule, *Edwards* established an exclusionary rule in the event evidence is obtained in counsel's absence, after the accused has requested counsel's presence.

In the case at hand, however, it is not the conventional violation of *Miranda* nor *Edwards* principles of which the defendant complains. For in fact, prior to each custodial

interrogation, either Detective English or Detectives Wright and Fuller fully advised Stewart of his right to counsel and his right to have counsel appointed should he be incapable of retaining counsel at his own expense. At no time *during interrogation* did Stewart request counsel. Nonetheless, Stewart argues, his continuous incarceration, coupled with his request for counsel at his arraignment on the unrelated robbery charge, combine to create a violation of his Fifth Amendment right to counsel in the present case. It is necessary, therefore, to study both the Sixth Amendment right to counsel and the interplay between the Fifth and Sixth Amendments' guaranties.

## II
### Sixth Amendment Right to Counsel

"In all criminal prosecutions, the accused shall enjoy the right to . . . have the assistance of counsel for his defense." U.S. Const. amend. 6.

In defining the scope of this right, the Court in *Powell v. Alabama,* 287 U.S. 45, 77 L. Ed. 158, 53 S. Ct. 55 (1932), held the Sixth Amendment, incorporated via the Fourteenth Amendment, enforceable against the states and reversed the defendants' convictions:

> [D]uring perhaps the most critical period of the proceedings against these defendants, that is to say, from the time of their arraignment until the beginning of their trial, when consultation, thoroughgoing investigation and preparation were vitally important, the defendants did not have the aid of counsel . . .

*Powell v. Alabama,* 287 U.S. at 57.

In *United States v. Wade,* 388 U.S. 218, 18 L. Ed. 2d 1149, 87 S. Ct. 1926 (1967), the accused challenged the admissibility of state's evidence obtained at a lineup conducted without the presence of the accused's counsel. Therein, the Court vacated the judgment against the accused:

> In sum, the principle of *Powell* v. *Alabama* and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial

as affected by his right meaningfully to cross–examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.

*United States v. Wade,* 388 U.S. at 227. More recently, the Court held the Sixth Amendment right to counsel entitles the accused to counsel "*at or after the time that judicial proceedings have been initiated* against him—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" (Italics ours.) *Brewer v. Williams,* 430 U.S. 387, 398, 51 L. Ed. 2d 424, 97 S. Ct. 1232 (1977) (quoting *Kirby v. Illinois,* 406 U.S. 682, 689, 32 L. Ed. 2d 411, 92 S. Ct. 1877 (1972)).

There is strong justification for the attachment of Sixth Amendment guaranties at or after the time formal judicial proceedings have commenced:

This is because, after the initiation of adversary criminal proceedings, "'the government has committed itself to prosecute, and . . . the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.'"

*Maine v. Moulton,* 474 U.S. 159, 170, 88 L. Ed. 2d 481, 106 S. Ct. 477 (1985) (quoting *United States v. Gouveia,* 467 U.S. 180, 189, 81 L. Ed. 2d 146, 104 S. Ct. 2292 (1984) (quoting *Kirby v. Illinois,* 406 U.S. at 689)).

As a result, once the Sixth Amendment right to counsel has attached, the state may not properly interrogate the accused in the absence of counsel unless the accused validly waives his or her constitutional right. *Brewer v. Williams,* 430 U.S. at 404. Furthermore, a waiver in such an instance will not be inferred:

The District Court and the Court of Appeals were also correct in their understanding of the proper standard to be applied in determining the question of waiver as a matter of federal constitutional law—that it was incumbent upon the State to prove "an intentional relinquishment or abandonment

of a known right or privilege." That standard has been reiterated in many cases. We have said that the right to counsel does not depend upon a request by the defendant, and that courts indulge in every reasonable presumption against waiver. This strict standard applies equally to an alleged waiver of the right to counsel whether at trial or at a critical stage of pretrial proceedings.

(Citations omitted.) *Brewer v. Williams,* 430 U.S. at 404.

Accordingly, following Stewart's arraignment on the unrelated robbery charge, had police initiated interrogation on facts relating to that charge in the absence of Stewart's counsel, and in the absence of a valid waiver, Stewart's Sixth Amendment right would have been violated. That, however, is not the case presently before this court.

## III
## The Unfortunate Commingling of the Fifth and Sixth Amendments' Guaranties of the Right to Counsel

In *Michigan v. Jackson,* 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404 (1986), the accused requested counsel at arraignment. Prior to meeting with appointed counsel, and while in custody following arraignment, two police officers interviewed the accused *regarding the charge upon which the accused had just been arraigned.* At that interview, the officers advised the accused of his *Miranda* rights, which the accused waived.

In that case, the Court unfortunately phrased the issue as whether the accused had validly waived the right to counsel at the postarraignment custodial interrogation, a right derived from two sources: the Fifth Amendment protection against compelled self-incrimination at custodial interrogations, and the Sixth Amendment guaranty of the assistance of counsel at postarraignment interrogations. Today, Stewart firmly grasps to the Court's holding therein:

"[T]he assertion of the right to counsel [is] a significant event," . . . We conclude that the assertion is no less significant, and the need for additional safeguards no less clear, when the request for counsel is made at an arraignment and when the basis for the claim is the Sixth Amendment. We thus hold that, if police initiate interrogation after a defendant's assertion, at

an arraignment or similar proceeding, of his right to counsel, any waiver of the defendant's right to counsel for that police–initiated interrogation is invalid.

*Michigan v. Jackson,* 475 U.S. at 636 (quoting *Edwards v. Arizona,* 451 U.S. 477, 485, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981)).[1]

Accepting the rule set forth in *Michigan v. Jackson, supra,* Stewart's argument still fails to distinguish the fact that in that case the arraignment triggering the Sixth Amendment right to counsel was on the same charge for which the accused was interrogated. In the case at hand, the state apparatus positing the government against the defendant, the situation out of which the Sixth Amendment right to counsel arises, was not in place as to the six burglary charges at issue today. Stewart confessed to the six burglaries on April 30 and May 1, 1985. The information on the burglary charges was not filed until November 19, 1985.

While by no means dispositive, an analogy can be drawn between the case at hand and the Court's recent holding in *Connecticut v. Barrett,* 479 U.S. 523, 93 L. Ed. 2d 920, 107 S. Ct. 828 (1987). Therein, the issue was whether the accused had invoked his Fifth Amendment right to counsel when he said "'he was willing to talk about [the incident] verbally but he did not want to put anything in writing until his attorney came.'" *Connecticut v. Barrett,* 479 U.S. at 526. In finding the rule in *Edwards* is inapplicable in such a situation, the Court held:

> To conclude that respondent invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of respondent's statement.

---

[1]As an aside, it should be noted that then–Justice Rehnquist, joined by Justices Powell and O'Connor, dissented in *Michigan v. Jackson,* 475 U.S. 625, 89 L. Ed. 2d 631, 106 S. Ct. 1404 (1986), persuasively arguing that the "bright–line" prophylactic rule of *Edwards v. Arizona,* 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981) has no application in the Sixth Amendment setting. Were this court in a position to reconsider the wisdom of the rule in *Michigan v. Jackson, supra,* Justice Rehnquist's dissent in that case would provide a strong foothold for so doing. Nonetheless, that issue need not be addressed to resolve the issue at hand.

*Connecticut v. Barrett,* 479 U.S. at 529–30. Likewise, to find that Stewart invoked his Fifth Amendment right to counsel on the present charges merely by requesting the appointment of counsel at his arraignment on the unrelated charge is to disregard the ordinary meaning of that request. Certainly any possible confusion is subsequently cured by the *Miranda* warnings given immediately prior to interrogation on facts surrounding an investigation wholly unrelated to the preceding arraignment.

Nevertheless, Stewart and the majority of the Court of Appeals rely almost exclusively on *Arizona v. Roberson,* 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093 (1988), wherein the accused invoked his Fifth Amendment right to counsel during a custodial interrogation. Subsequently, interrogation ceased, but the accused did not meet with counsel. Nevertheless, the police reinitiated interrogation, but on an unrelated charge. Emphasizing the virtues of a bright–line rule, a majority of the Court in that case held the rule in *Edwards* prohibited reinterrogation, despite the fact that the basis of the first interrogation, during which the accused requested counsel, was unrelated to the charges at issue during the second interrogation.[2]

It must be borne in mind, the basis for the rule in *Arizona v. Roberson, supra,* arising out of the assumptions in *Miranda,* is that the accused "considers himself unable to

---

[2]Again, as an aside, the dissent in *Arizona v. Roberson,* 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093 (1988) authored by Justice Kennedy, with whom Chief Justice Rehnquist joined, offers strong support for the future reconsideration of the extension of the *Edwards* rule to a situation involving an unrelated charge. The purpose of the *Edwards* prophylactic rule is to avoid badgered, and therefore possibly unreliable, confessions. Justice Kennedy persuasively argues that where the subsequent questioning

is confined to an entirely independent investigation, there is little risk that the suspect will be badgered into submission.

. . . Whatever their eagerness, the police in a separate investigation may not commence any questioning unless the suspect is readvised of his *Miranda* rights and consents to the interrogation, and they are required by *Edwards* to cease questioning him if he invokes his right to counsel.

*Arizona v. Roberson,* 486 U.S. at 690.

deal with the pressures of custodial interrogation without legal assistance". *Arizona v. Roberson,* 486 U.S. at 683. Thus, the Court reasoned, any further interrogation presents the potential for a violation of the Fifth Amendment right against self–incrimination, regardless of the topic covered in the subsequent interrogation. In contrast, in the case at hand, Stewart never invoked his Fifth Amendment right to counsel. That is to say, during the inherently coercive setting of custodial interrogation, Stewart never requested counsel.

In fact, given the Court's analysis in other cases involving separate and independent investigations, it is apparent that the *Arizona v. Roberson, supra,* rule is inapplicable in the case at hand. For example, in *Maine v. Moulton,* 474 U.S. 159, 88 L. Ed. 2d 481, 106 S. Ct. 477 (1985), after formal proceedings had been initiated against the accused, the government electronically wired an accomplice/informant to record the accused's incriminating statements. Focusing on the origin of the Sixth Amendment right to counsel, the Court held statements made regarding charges already brought were inadmissible. Whereas, the statements that were made that merely incriminated the accused in new crimes, *uncharged at the time of the taping,* were not similarly violative:

> [T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities.

*Maine v. Moulton,* 474 U.S. at 180. In a footnote, the Court continued, "[i]ncriminating statements pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of course, admissible at a trial of those offenses." *Maine v. Moulton,* 474 U.S. at 180 n.16. *See also Michigan v. Mosley,* 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975) (a suspect who is arrested on robbery charges,

who invokes his right to silence, may be questioned later about an unrelated murder).[3]

## IV
## Should This Court Commingle the Fifth and Sixth Amendments' Guaranties of the Right to Counsel in the Instant Case?

■■ The foregoing analysis demonstrates the application of different constitutional tests depending upon the situation of the accused. Under the Fifth Amendment paradigm, where the accused is in custody and subjected to interrogation, regardless of whether formal proceedings have been initiated, interpretation of the Fifth Amendment right against self–incrimination requires that the accused be warned of his constitutional right to have counsel present during this inherently coercive situation. Should that right be waived, interrogation may proceed. However, should the accused request counsel *in such a situation,* interrogation must cease until counsel is present, unless the accused initiates further communication.

In contrast, in a Sixth Amendment setting, where formal proceedings have been initiated against the accused, regardless of whether the accused is in custody, the Sixth

---

[3]In a footnote, the Court in *Michigan v. Mosley,* 423 U.S. 96, 46 L. Ed. 2d 313, 96 S. Ct. 321 (1975) distinguished between a suspect's request for counsel and a suspect's invocation of his right to remain silent:

The dissenting opinion asserts that *Miranda* established a requirement that once a person has indicated a desire to remain silent, questioning may be resumed only when counsel is present. But clearly the Court in *Miranda* imposed no such requirement, for it distinguished between the procedural safeguards triggered by a request to remain silent and a request for an attorney and directed that "the interrogation must cease until an attorney is present" only "[i]f the individual states that he wants an attorney."

(Citations omitted.) *Michigan v. Mosley,* 423 U.S. at 104 n.10 (quoting *Miranda v. Arizona,* 384 U.S. 436, 474, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966)). Notwithstanding *Arizona v. Roberson,* 486 U.S. 675, 100 L. Ed. 2d 704, 108 S. Ct. 2093 (1988), the distinction quoted, *supra,* signals the continued vitality of the rule enunciated in *Michigan v. Mosley, supra.*

Amendment right to counsel has attached *as to those charges.*

Notwithstanding this analysis, Stewart requests this court to extend the *Edwards* prophylactic rule in order to shield his custodial confession that occurred following the invocation of his Sixth Amendment right to counsel at an arraignment on an unrelated charge. Stewart presses for the extension of the rule, even though his request for counsel occurred in a setting in which *Miranda,* and thus *Edwards,* are wholly inapplicable. Nonetheless, Stewart claims, the possibility of potential confusion demands the protection of unwary defendants. We are unpersuaded.[4]

While not controlling on the present facts, Stewart argues the combined logic of *Michigan v. Jackson, supra,* and *Arizona v. Roberson, supra,* supports his position. In fact, in three of the five cases where this question has arisen, the United States Court of Appeals for the Seventh Circuit, the Michigan Court of Appeals, and our Court of Appeals in the case at hand have each held the invocation of the Sixth Amendment right to counsel at arraignment effectively terminates any interrogation on unrelated crimes for Fifth Amendment purposes.

In *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117 (7th Cir.), *cert. denied,* 483 U.S. 1010 (1987), the

---

[4]At an arraignment, the court reads the charges upon which the defendant is appearing. Should the defendant need the assistance of appointed counsel, the court may enter an order so providing. Even to the most uneducated defendant, this process makes the purpose for the appointment of counsel abundantly clear. Nevertheless, should confusion actually exist, ample opportunity for clarification exists during the subsequent custodial interrogation on the unrelated investigation. In fact, before any questioning occurs, the defendant is given his *Miranda* warnings. Under those warnings, the defendant is immediately told he or she has the right to the presence of counsel. Should confusion still exist, it is not unreasonable to assume a defendant would state, "I just asked for counsel at my arraignment." At that time, pursuant to *Miranda* and *Edwards,* questioning would cease. Our holding today is bolstered by the facts of this case. There is no showing the defendant was confused by the appointment of counsel at arraignment, followed by the subsequent *Miranda* warnings prior to interrogation. Furthermore, there is absolutely no hint the unrelated robbery arrest was a mere pretext to enable an in–custody interrogation on these charges.

accused was arrested on a weapons charge, and at his arraignment on that charge he was represented by counsel. Subsequently, while still in custody, the police interrogated the accused regarding a murder, to which the accused confessed. The Court of Appeals held that no Sixth Amendment right to counsel had attached on the murder charge, but that the accused's invocation of his *Fifth Amendment* right to counsel at his *arraignment* on the weapons charge (which we would classify as an invocation of the Sixth Amendment right to counsel) rendered his subsequent confession to the murder inadmissible. The court felt compelled by the Court's holding in *Michigan v. Jackson, supra,* to "presume that an individual has invoked the full extent of his or her constitutional right to counsel." *United States ex rel. Espinoza v. Fairman,* 813 F.2d at 123. The flaw in this analysis is that there is no basis from which to assume the invocation of the Fifth Amendment right to counsel in an arraignment setting. It will be recalled *Michigan v. Jackson, supra,* involved solely the Sixth Amendment right to counsel.

Persuaded by the Seventh Circuit's reasoning, the Michigan Court of Appeals in *People v. Crusoe,* 170 Mich. App. 403, 427 N.W.2d 634, *appeal granted,* 431 Mich. 906, 432 N.W.2d 714 (1988) suppressed the accused's confession and reversed his conviction. In that case, the accused had been arrested on an assault charge; was subsequently arraigned; requested the appointment of counsel on that charge; and while in continuous custody, confessed to an unrelated bank robbery after waiving his *Miranda* rights. The court assumed the accused was invoking both the Fifth and Sixth Amendments' rights to counsel, even though no basis existed at that point in time for the Fifth Amendment right to attach:

> When defendant requested counsel at his arraignment on the charges of . . . assault, we presume that he was invoking both his Sixth Amendment right to be represented at every critical stage of the prosecution of those . . . charges as well as his Fifth Amendment right to be represented during interrogation

on the . . . assault charges or on any other crime for which he may have been a suspect.

*People v. Crusoe,* 170 Mich. App. at 408. As in *Espinoza,* this was the holding despite the fact that no interrogation was taking place that might have implicated Fifth Amendment rights, and no Sixth Amendment right had accrued on the unrelated investigation.

Also directly on point, but reaching the opposite conclusion is *Butler v. Aiken,* 846 F.2d 255 (4th Cir. 1988), *cert. granted,* 109 S. Ct. 1952 (1989). In that case, the accused was arrested on an unrelated assault and battery charge. He retained counsel, and his counsel appeared at a subsequent bond hearing on his behalf. The accused, however, was unable to make bond and remained in the custody of the jail. One day later, the accused was interrogated on a murder charge after waiving his *Miranda* rights. At no time did he request the presence of counsel. The accused confessed to the murder. Following conviction and exhaustion of available state remedies, the defendant sought relief via a writ of habeas corpus, contending his Fifth Amendment right to counsel invoked by the appearance of his attorney at the bond hearing on the unrelated charge effectively invoked his Fifth Amendment right for interrogation purposes on the murder investigation. Rejecting this argument, and the reasoning of the Seventh Circuit in *Espinoza,* the court stated, "[w]e are not persuaded, however, by the Seventh Circuit's dramatic extension of *Edwards.*" *Butler v. Aiken,* 846 F.2d at 258.

The court in *Butler v. Aiken, supra,* intelligently analyzed the distinctions between the Fifth and Sixth Amendments' guaranties of the right to counsel. Upon a proper understanding of the origins of those rights, the court concluded:

> Although superficially appealing, we are convinced that the decision of the Seventh Circuit pursues a false symmetry while cutting the decision in *Edwards* away from its conceptual base.

*Butler v. Aiken,* 846 F.2d at 258. It could not have been more aptly stated:

As the Supreme Court has observed, the "prophylactic rule" adopted in *Edwards* "has only a tangential relation to truth-finding." It was articulated as a reflection of the Court's belief that additional procedural safeguards were needed to protect an accused's preexisting right to request counsel during custodial interrogation. Such "safeguards" by their inherent nature are a judicial response to specific and identifiable conditions that undermine the perceived integrity of the legal system. In *Miranda,* for example, the Court sought to insure that statements made by an accused while in the unavoidably coercive atmosphere of custodial interrogation could reasonably be viewed as truly voluntary. In *Edwards,* the Court's concern lay with police conduct that might badger an accused into abandoning a previously invoked right.

We fail to see how the actions of the Charleston police could fall within the intent of the Court in *Edwards.* There is no suggestion that [the defendant's] arrest on the assault charges was a sham intended to make him available for questioning upon a more serious offense. Neither was there "reinterrogation" on the same offense that might have sent mixed signals regarding his continuing right to request counsel. *Certainly, if [the defendant] had been released on bond and then rearrested an hour later on murder charges, the authorities would have been permitted to engage in proper interrogation. We see no reason for a different result simply because the custody was continuous.*

(Citations omitted. Italics ours.) *Butler v. Aiken,* 846 F.2d at 258–59.

The only other case directly on point is *State v. Sparklin,* 296 Or. 85, 672 P.2d 1182 (1983). In that case, the accused was arrested on an unrelated forgery charge. He was subsequently arraigned, and at that time, he requested and was provided with counsel. Later that evening, police questioned the accused regarding an assault, robbery, and murder investigation. The accused confessed and was convicted. It is noted, the accused's confession was preceded by *Miranda* warnings, which he waived. Properly analyzing the origins of the distinct constitutional guaranties, the court rejected the accused's Fifth Amendment argument:

We do not regard this defendant's request for an attorney at arraignment as an assertion of his right to be free from compelled self incrimination. The need for an attorney's presence at interrogation arises when the state may elicit from defendant admissions or confessions. At arraignment defendant is not

confronted with an atmosphere of coercion, nor does anyone seek to gain admissions from him.

*State v. Sparklin,* 296 Or. at 89.

Finally, we approve of dicta in *State v. Cornethan,* 38 Wn. App. 231, 684 P.2d 1355 (1984) supporting our position today. In that case the accused was arrested on an unrelated assault charge and taken to the hospital for treatment following his arrest. An attorney was appointed to represent him on that charge. Subsequently, detectives visited the accused at the hospital, read him his *Miranda* rights, and interrogated him on a murder investigation. After waiving his *Miranda* rights, the accused confessed to the murder. The Court of Appeals affirmed the conviction for murder. The court hypothetically assumed the accused had invoked his right to counsel on the assault charge in order to show that even under those circumstances, no constitutional violation had occurred:

> We hold that *Edwards* is not controlling in these circumstances. The per se rule of *Edwards* should not be extended to suppress a confession which, as here, is in all other respects knowing, voluntary and intelligent. Thus, even if [the accused] had invoked his right to counsel in the assault matter, his confession to the murder was properly admitted at trial.

(Citations omitted.) *State v. Cornethan,* 38 Wn. App. at 236–37.

In the end, we hold Stewart's Sixth Amendment right to counsel did not attach on these burglary charges until months after his confessions. He did not invoke his Fifth Amendment right to counsel when he requested an attorney at an arraignment on an unrelated charge. The Fifth Amendment right to counsel exists solely to guard against coercive, and therefore unreliable, confessions obtained during in–custody interrogation, which was not occurring at the time Stewart requested counsel. Subsequently, prior to giving his confession, Stewart was given *Miranda* warnings and did not invoke his Fifth Amendment right at that time. There has been no showing of confusion on the part of the defendant, nor trickery on the part of the State. Extension

of the *Edwards* rule to this fact scenario would constitute a misapplication of that prophylactic rule.

Accordingly, we reverse the Court of Appeals holding that Stewart's Fifth Amendment right to counsel was violated and reinstate the judgment of conviction on all six counts of burglary.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.