[No. 33832-3-I.    Division One.    May 1, 1995.]

THE STATE OF WASHINGTON, *Respondent*, v. MELVIN CLARENCE WARNESS, *Appellant*.

*Jeanette Brinster* and *Mark Watanabe,* for appellant.

*James H. Krider, Prosecuting Attorney,* and *Seth Aaron Fine, Deputy,* for respondent.

BAKER, C.J. — Melvin Warness appeals his conviction for second degree rape. He argues that (1) evidence was wrongly admitted concerning statements he made in response to police questioning, and (2) certain opinion testimony of an expert

witness was admitted without a proper foundation. We affirm because Warness did not invoke his Fifth Amendment right to counsel prior to making statements to police and the expert testimony was properly admitted.

## FACTS

Investigating a rape complaint, a police officer contacted Warness at his home. The officer made it clear to Warness that he was not under arrest, did not have to speak to the police, and was free to leave at any time. Sometime after the conversation began, Warness stated he did not want to talk any further without an attorney. The officer ended the conversation and left.

Approximately 1 month after the incident a warrant was issued for Warness' arrest. After arresting Warness, a second police officer informed him of his *Miranda*[1] rights. Warness acknowledged his rights and signed a written waiver. Warness then made statements to the effect that he had not had intercourse with the alleged victim on the evening in question. Warness later invoked his right to counsel.

Prior to trial, Warness objected to the admission of his statements to the second officer, arguing that he invoked his right to counsel regarding the rape investigation during the first meeting with police. The trial court allowed the statements, ruling that Warness' Fifth Amendment rights had not attached at the first meeting.

Warness declined to testify at trial and stipulated to having had intercourse with the victim on the evening in question. During the testimony of the interrogating officer, Warness' statements that he had not had intercourse were elicited.

The victim had described to police a wound she inflicted on Warness by biting his left hand as he held it over her mouth. Dr. Bell, a forensic odontologist, was permitted to testify at trial that marks on Warness' hand, evidenced by photographs taken at the time of his arrest, were consistent with a bite

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

mark. Dr. Bell noted that his opinion could not be conclusive based on the evidence he was provided. Warness objected to this testimony prior to trial. The trial court admitted the testimony, ruling that the lack of certainty went to the weight of the evidence and not to its admissibility.

Warness was found guilty of second degree rape.

## I

Warness argues that his statements made to the police after waiving his *Miranda* rights should not have been admitted at trial because he had previously invoked his right to counsel. In order to protect a defendant's Fifth Amendment right against compelled self-incrimination,[2] the United States Supreme Court determined in *Miranda v. Arizona, supra,* that a suspect must be given the right to remain silent and the right to the presence of counsel during any custodial interrogation. The police officer or prosecutor must inform the suspect of these rights prior to interrogating, and the suspect may either invoke or waive them. If a suspect invokes the right to silence the police must cease interrogation until a later time. The Supreme Court later held that once the right to counsel is invoked the police cannot initiate further interrogation or seek a waiver until the suspect has an opportunity to meet with counsel. *Edwards v. Arizona,* 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880 (1981). The Supreme Court recently held that counsel must be present during any future interrogation once the right to counsel is invoked. *Minnick v. Mississippi,* 498 U.S. 146, 112 L. Ed. 2d 489, 111 S. Ct. 486 (1990).

The *Miranda* protection is premised on custodial interrogation. Both factors must be present for *Miranda* protection to attach. A suspect who is not in custody does not have *Miranda* rights. *See Stansbury v. California,* 511 U.S. 318, 128 L. Ed. 2d 293, 114 S. Ct. 1526, 1528 (1994). A suspect who is in custody but not being interrogated does not have

---

[2]The Washington State Constitution provides the same protection as the Fifth Amendment. Const. art. 1, § 9; *State v. Foster,* 91 Wn.2d 466, 473, 589 P.2d 789 (1979).

*Miranda* rights. *See United States v. LaGrone*, 43 F.3d 332, 339 (7th Cir. 1994).

Warness attempted to invoke his right to counsel during a noncustodial conversation with a police officer. At that time his right to counsel had not yet attached. Nevertheless, Warness argues that this invocation had the effect of prohibiting any future custodial interrogation.

The United States Supreme Court has yet to address this issue.

> We have in fact never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than "custodial interrogation" . . .. If the *Miranda* right to counsel can be invoked at a preliminary hearing, it could be argued, there is no logical reason why it could not be invoked by a letter prior to arrest, or indeed even prior to identification as a suspect. Most rights must be asserted when the government seeks to take the action they protect against. The fact that we have allowed the *Miranda* right to counsel, once asserted, to be effective with respect to future custodial interrogation does not necessarily mean that we will allow it to be asserted initially outside the context of custodial interrogation, with similar future effect.

*McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3, 115 L. Ed. 2d 158, 111 S. Ct. 2204 (1991) (holding that defendant's invocation of Sixth Amendment right to counsel is offense-specific and does not also invoke Fifth Amendment right regarding a different offense). Several jurisdictions have held that a suspect cannot anticipatorily invoke his or her *Miranda* right to counsel. *See, e.g., State v. Stewart*, 113 Wn.2d 462, 471, 780 P.2d 844 (1989), *cert. denied*, 494 U.S. 1020 (1990); *LaGrone*, 43 F.3d at 339-40 (citing other jurisdictions as well); *Alston v. Redman*, 34 F.3d 1237, 1244, 1249 (3d Cir. 1994) (finding that suspect in custody must at least be subject to impending interrogation to invoke *Edwards* protection), *cert. denied*, 115 S. Ct. 1122 (1995); *Tipton v. Commonwealth*, 18 Va. App. 832, 447 S.E.2d 539 (1994); *People v. Vigoa*, 841 P.2d 311 (Colo. 1992). Those courts determined that an attempt to invoke the right to counsel when the suspect is either not in custody or not being interrogated has no effect. For example, in *Stewart* the court held that Stewart's invocation of his

right to counsel at arraignment did not invoke his Fifth Amendment right to counsel regarding a subsequent interrogation concerning different charges. *Stewart*, 113 Wn.2d at 471. The court noted that "[t]he Fifth Amendment right to counsel exists solely to guard against coercive, and therefore unreliable, confessions obtained during in-custody interrogation, which was not occurring at the time Stewart requested counsel." *Stewart*, 113 Wn.2d at 478.

We find these cases persuasive, and hold that the Fifth Amendment right to counsel cannot be invoked by a person who is not in custody. The right is not itself provided by the constitution, but is designed to counteract the coercion inherent in custodial interrogations and protect the constitutional right to be free from compelled self-incrimination. *See Davis v. United States*, 512 U.S. 452, 129 L. Ed. 2d 362, 114 S. Ct. 2350, 2354 (1994). The need for *Miranda* protection does not exist except in a custodial interrogation situation. The right cannot be invoked before it exists.

■ Warness argues he was in custody for purposes of *Miranda-Edwards* protection during his initial meeting with police because he was the focus of their investigation. In making this argument, Warness acknowledges that he is asking this court to ignore recent state Supreme Court precedent regarding the definition of custody. In *State v. Harris*, 106 Wn.2d 784, 789-90, 725 P.2d 975 (1986), *cert. denied*, 480 U.S. 940 (1987) the court rejected the notion that police must give *Miranda* warnings before questioning someone not in custody who is the focus of their investigation. *See also State v. Short*, 113 Wn.2d 35, 40-41, 775 P.2d 458 (1989).

■ Warness does not cite recent United States Supreme Court precedent also on point. In *Stansbury v. California, supra*, the court rejected California's definition of custody for purposes of *Miranda* protection. California had applied a definition of custody which included the situation Warness asks for: when the investigation has focused on the subject. *Stansbury*, 114 S. Ct. at 1528. Stansbury voluntarily went with police to the station house for questioning. *Stansbury*, 114 S. Ct. at 1527. Stansbury was arrested during the

course of the interrogation, and sought to suppress statements he made prior to his arrest. The Court reasoned that Stansbury was not in custody unless and until he reasonably believed his freedom of action was restricted. *Stansbury*, 114 S. Ct. at 1530. The Court found that the officers' suspicions regarding Stansbury were relevant only to the extent they were communicated to him and affected his beliefs regarding his freedom. The case was remanded to the California Supreme Court to determine whether objective circumstances showed that Stansbury was in custody during the entire interrogation at the station house. *Stansbury*, 114 S. Ct. at 1531. Because the purpose of the *Miranda* warnings is to protect a suspect from compelled incrimination in the coercive environment of custodial interrogation, the suspect must reasonably believe he or she is in custody as a prerequisite to *Miranda* protection.

In this case, Warness was approached at his home and was able to end his contact with police at will. The officer made clear to Warness that he did not have to talk and was free to end the conversation at any time. Warness could not reasonably have believed that his freedom of action was restricted. Warness was not in custody during his first meeting with police and was, therefore, not able to invoke his Fifth Amendment right to counsel.

## II

■ Finally, Warness argues the State's expert witness, Dr. Bell, should not have been allowed to testify that the marks on Warness' hand were consistent with a bite from the victim. "The decision whether or not to admit expert opinion evidence is within the discretion of the trial court and will not be disturbed absent a showing of an abuse of that discretion." *State v. Swan*, 114 Wn.2d 613, 655, 790 P.2d 610 (1990), *cert. denied*, 498 U.S. 1046 (1991); *see also State v. Gentry*, 125 Wn.2d 570, 593-94, 888 P.2d 1105 (1995).

Warness takes the position that an expert's opinion is only relevant if it is conclusive. In this case, the expert testified that his opinion was not conclusive, but the evidence was consistent with the alleged victim's assertion that she had bitten Warness.

■ Expert testimony which is merely speculative is not admissible. However, inadmissible speculation is not the same as a legitimate opinion regarding what "could be" the truth, so long as that opinion can be stated with the requisite reasonable scientific probability. *See* 5A Karl B. Tegland, Wash. Prac., *Evidence* § 297, at 426 (3d ed. 1989).[3] In *State v. Lord*, 117 Wn.2d 829, 822 P.2d 177 (1991), *cert. denied*, 113 S. Ct. 164 (1992) the court noted:

> [E]xpert testimony couched in terms of "could have", "possible", or "similar" is uniformly admitted at trial. The lack of certainty goes to the weight to be given the testimony, not to its admissibility. This is so, in part, because the scientific process involved often allows no more certain testimony.

*Lord*, 117 Wn.2d at 853.

As long as the scientific methods used to form the opinion are generally accepted within the relevant community, an expert's lack of certainty does not render the evidence inadmissible. *Lord*, 117 Wn.2d at 854-55. Warness admits to the qualification of Dr. Bell and the general validity of this type of evidence. Dr. Bell's opinion was simply not conclusive. Its probative value was therefore limited, but its relevance was not extinguished. The trial court correctly found the expert's uncertainty relevant to the weight and not the admissibility of his testimony.

Warness also argues the expert testimony was more prejudicial than probative. However, Warness was able to counter the expert opinion with several witnesses who saw no marks on Warness' hand around the time of the alleged incident, and with evidence that Warness had been working on a car, which could have left similar marks, before any photographs were taken of his hand. The expert himself admitted that his opinion was only that the marks were of a size and shape consistent with a bite by the victim. The trial

---

[3]Warness cites *State v. Huynh*, 49 Wn. App. 192, 194 n.1, 742 P.2d 160 (1987), *review denied*, 109 Wn.2d 1024 (1988) as authority for his argument that an expert cannot testify regarding what evidence "could" mean. Interestingly, the court in *Huynh* cited only Tegland (second edition) as authority for this dicta. Tegland, in turn, noted that the court's statement in *Huynh* is more restrictive than other precedent. Tegland § 297, at 426 n.6.

court's decision to admit the testimony was well within its discretion.

Affirmed.

KENNEDY and BECKER, JJ., concur.