KRUEGER, Plaintiff in error, v. STATE, Defendant in error.

*No. State 113. Argued November 30, 1971.—Decided January 4, 1972.*
(Also reported in 192 N. W. 2d 880.)

346

For the plaintiff in error there was a brief by *Niebler & Niebler,* attorneys, and *George N. Kotsonis* of counsel, all of Menomonee Falls, and oral argument by *Mr. Kotsonis.*

For the defendant in error the cause was argued by *Richard J. Boyd,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

HEFFERNAN, J. We are satisfied that the defendant did not have the right to a change of judge upon the filing of the affidavit of prejudice following the remand to the trial court. Section 956.03 (1), Stats. 1967, provides for the circumstances under which there may be a change of judge. The statute provides in part, "In felony cases the motion shall be made within 20 days after his arraignment and before the case is called for trial." It is clear that the motion was not timely, and a

change of judge at this juncture was not a matter of right.

Defendant also argues that there should be a change of judge in a criminal trial at any time or at any stage of the proceedings when actual prejudice of the judge is observed or if the trial judge's refusal to disqualify himself will sanction a procedure that is inherently lacking in procedural due process. We need not in this case reach the proposition so asserted by the defendant, for it is clear that there was no showing of actual prejudice by the trial judge, and in fact there was no attempt to show actual prejudice. Rather, the defendant asserts that, where a trial judge has once made a determination contrary to the defendant's interests, it would be inherently prejudicial to countenance a procedure wherein a trial judge would make a new determination on substantially the same facts and where he might be called upon to reverse his own prior decision. We are satisfied that that is not the law. Our judicial system is predicated upon the premise that trial judges will make their determinations on the basis of the facts before them and will not be motivated by pride of prior decision, to which they will adhere contrary to the facts and law as revealed in a subsequent proceeding.

A similar problem was dealt with in *State v. Carter* (1966), 33 Wis. 2d 80, 146 N. W. 2d 466. In that case, the record was returned to the trial judge to determine under proper standards the admissibility of a confession which had been allowed in evidence in the original trial. An affidavit of prejudice on the ground that the trial judge could not determine the matter fairly because he had already ruled on the matter was filed and denied. On appeal to this court, we stated that it was not error for a trial judge to hear supplemental evidence in the face of an affidavit of prejudice. We said at pages 87, 88:

"While we do not hold that in no instance should the original trial judge refuse to disqualify himself as a

matter of proper judicial discretion, we are of the opinion that unless it can be clearly shown that the trial court has demonstrated a prejudice toward the defendant the original trial judge should, where possible, conduct the supplemental proceeding to determine the voluntariness of a confession."

We conclude that the same reasoning is applicable here. While, in some instances, a judge in the exercise of judicial discretion should disqualify himself if the question of prejudice is raised, it is apparent that there was no reasonable showing of any prejudice whatsoever on the part of Judge STEFFES in the instant case. There were no facts that would lead this court to conclude that he abused his discretion in refusing to disqualify himself. On the contrary, there is every evidence of record that Judge STEFFES went to great length to assure that the hearing on the remand was fairly and properly held. The defendant was given every opportunity to assert his claims.

It should be pointed out that the recently enacted postconviction remedy statute, sec. 974.06, Stats. (Laws of 1969), specifically requires a convicting court to review its own proceedings, judgment, and sentence. It is apparent that the legislature did not find any inherent lack of due process in a procedure where a trial judge was obligated to review allegations that he had erred in the original trial.

In the instant case, there was no showing of prejudice, and we are satisfied there was none. In the exercise of discretion, the trial judge properly refused the motion for a change of judge.

At the time the pleas of guilty were taken in 1965, this court followed the rule of *State v. Strickland* (1965), 27 Wis. 2d 623, 135 N. W. 2d 295. Under that rule, it was assumed that, where the defendant is represented by competent counsel and pleads guilty, he has been advised of his constitutional rights and that his plea constitutes a

waiver of any objections to the procedure prior to arraignment. We said in *State v. Biastock* (1969), 42 Wis. 2d 525, 532, 167 N. W. 2d 231:

". . . defendant waived objections to alleged violations of his constitutional rights occurring prior to his plea even though such violations were a direct cause of the entry of the guilty plea."

We said further in *Biastock, supra,* at pages 532, 533:

"Defendant was represented by counsel in the trial court. Therefore, in the absence of proof to the contrary, it must be assumed that counsel advised the defendant of all possible defenses."

More recently, the United States Supreme Court said in *McMann v. Richardson* (1970), 397 U. S. 759, 770, 90 Sup. Ct. 1441, 25 L. Ed. 2d 763:

"In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession."

In the instant case, the trial court chose not to rest its decision on the defendant's possible waiver of his constitutional rights by the pleas of guilty and went directly to the merits of the question of whether the defendant had been coerced into giving an involuntary statement.

The record shows that the defendant was arrested with a companion in an alleyway at approximately 2:30 a. m. on March 14, 1965. He was intoxicated, and he was arrested on that charge. The validity of this original arrest is not raised.

After he was arrested he was searched, and he was found to have in his pocket a metal object about three and one-half inches long and about half an inch in diameter. He was not then informed of his constitutional rights, inasmuch as the arrest and the original trial of

the case were prior to the mandate of the United States Supreme Court in *Miranda v. Arizona* (1966), 384 U. S. 436, 86 Sup. Ct. 1602, 16 L. Ed. 2d 694.

After the metal object was found, the defendant was considered to be a burglary suspect, because similar tools had been used in recent burglaries that involved breaking store windows. The defendant was questioned at the station house at approximately 2:50 a. m. for five or ten minutes. He was again questioned for about half an hour at about 4 a. m. He made no incriminating statements. He admitted that he was carrying the metal object, but said it was for self-defense and that he carried it for no felonious purpose. He was questioned at 9 a. m., and the report shows that he was uncooperative and refused to answer any questions.

The record shows an entry at 1:30 p. m.:

"Subject's fingerprints found on glass at scene of Waldheim Furn. att burg and also found on tool used in burglary of Jensen Jeweler window smash on 2-19-65. Prints identified by Asst Supt H. Jennrich and sufficient for prosecution."

The defendant was questioned again at 4:30 p. m. on March 14. This interrogation lasted approximately one hour. It is conceded that prior to this interrogation defendant was fully informed of his constitutional rights to remain silent and to have a lawyer. After so informing him, the officers told him that they had secured fingerprints connecting him with certain burglaries and burglary attempts. There was police testimony that he was not intensively questioned.

The interrogation room was a small room, about 10 by 12 feet, with a 12-foot ceiling. There were windows in the room. One of the detectives testified that he gave the defendant coffee. One of the detectives was six feet three inches in height and weighed 225 pounds. The other was five feet 11 inches in height and weighed 180 pounds.

The defendant was five feet two inches in height and weighed 150 pounds. One of the detectives testified that, prior to the interrogation and after being warned of his constitutional rights, the defendant was permitted to make a phone call. According to the police testimony, this permission was granted prior to further interrogation.

When confronted with the fact that his fingerprints had been found at the scene of a burglary and at an attempted burglary, Krueger confessed to the burglary of the Jensen's Jewelers store on February 20, 1965, and Stone's Jewelers store on February 25, 1965. He also admitted breaking the glass at the Waldheim's Furniture store on March 13, 1965, at approximately 10 p. m. He showed a cut on his hand which was of very recent origin and which defendant said was an injury he sustained when attempting to break the glass at Waldheim's.

The defendant took the stand and stated that he was questioned three or four times, although in his motion to withdraw the pleas of guilty, he stated that he was interrogated continuously by teams of detectives for twenty-five hours. On the stand, he stated that he was questioned for seventeen to eighteen hours. He denied being informed of his constitutional rights prior to the time he confessed. He did not claim that he was sleepy or groggy at the time he was interrogated, but he claimed he did not understand what he was doing either at the time of interrogation or when he pleaded guilty. He claimed that he was not allowed to make a phone call until after the confession.

After hearing the testimony, Judge STEFFES made detailed findings that the confession was made by the defendant:

". . . completely freely, voluntarily and understandingly, without any constitutional contamination, and with the full prior knowledge of and advice as to his constitutional rights."

In so ruling, Judge STEFFES relied upon the "totality-of-the-circumstances" rule. The "totality-of-the-circumstances" rule was considered in *Phillips v. State* (1966), 29 Wis. 2d 521, 528, 139 N. W. 2d 41. We said:

" 'Although the rule of voluntariness is easy to state, the determination of what is a voluntary confession in a given fact situation may be difficult. In evaluating the facts for such purpose, the principle adopted by the United States supreme court is to consider the "totality of the circumstances"—all the facts surrounding the making of the confession. *Fikes v. Alabama* (1957), 352 U. S. 191, 77 Sup. Ct. 281, 1 L. Ed. (2d) 246.'

"The individual factors affecting voluntariness and contributing to the totality of the circumstances include denial of rights, questioning, threats, status of accused, nature of coercion, second confession, special techniques and previous experience with police. Defender Newsletter, Vol. II, No. 5, Sept. 1965. The process of determining voluntariness is one of weighing the circumstances of the police pressure against the power of resistance of the person confessing. What is overpowering to a weak mind or a first offender may be ineffectual against an experienced criminal. *Stein v. New York* (1953), 346 U. S. 156, 185, 73 Sup. Ct. 1077, 97 L. Ed. 1522."

In considering the totality of the circumstances, the trial judge pointed out that the facts in the defendant's motion were grossly in error, that he could not have been interrogated continuously for twenty-five hours as alleged, since the confession was elicited only fourteen hours after he was taken into custody. He also pointed out that the statement of the accused that he had been interrogated for seventeen hours was contrary to the undisputed facts. He concluded that, at the most, defendant was interrogated for a total period of three hours and then only intermittently.

The question is basically one of credibility, and the trial judge chose to disbelieve the exaggerated statements of the defendant. In the "totality of the circum-

stances," the confession was not obtained from the defendant under conditions where his free will was overborne by the tactics of the police or the coercive atmosphere of the station house.

On appeal, the defendant places great weight on the psychological coerciveness of the information given to him that his fingerprints appeared on tools used in previous burglaries. While we have no doubt, from a review of the record, that the confession was impelled by the disclosure of the fingerprint evidence, this does not constitute the utilization of overwhelming mental force or psychology by the police officers. A similar situation was referred to in *Phillips v. State, supra,* page 530, wherein this court, in discussing the facts in *Culombe v. Connecticut* (1961), 367 U. S. 568, 575, 81 Sup. Ct. 1860, 6 L. Ed. 2d 1037, stated:

> "The statements of the police respecting the fingerprints on the package of cigarettes while accusatorial in nature did not constitute such a threat as to control and coerce the mind of the defendant and render the confession involuntary. One must distinguish between motivation and a compelling overpowering mental force."

No doubt, the disclosure of the fingerprint evidence motivated the confession. It cannot be said, however, on the basis of the facts in the instant case, that, as a consequence, the confession then elicited was coerced or involuntary.

As in *Phillips,* the question here of the voluntariness of the confession turns primarily on the credibility of the witnesses. On the basis of the testimony at the hearing, the trial judge properly concluded that the confession was not coerced and that the defendant had therefore not been denied any constitutional rights which had in turn induced involuntary pleas of guilty.

The defendant raises an additional point not relating to the fact that the confession was allegedly coerced.

Rather, he claims that at 1:30 p. m., as the police record shows, there was sufficient evidence on the basis of the fingerprint examination to have forthwith charged the defendant with burglary. He therefore contends that the interrogation at 4:30 p. m. was to secure a "sew-up" confession; and, as a consequence, the subsequent pleas were induced by an illegal confession. It should be pointed out that the rule against "sew-up" confessions, as set forth in *Phillips v. State, supra,* was determined not to be retroactive in *State v. Carter, supra,* page 97. Moreover, *Phillips* points out that the "sew-up" confession is based on the *McNabb-Mallory* rule, which is concerned not with voluntariness, but rather rests upon the superintending power of the United States Supreme Court to curtail the illegal detention of a defendant when he has not been promptly brought before a committing magistrate. It becomes applicable when a defendant is held without charge for an unreasonable length of time. A "sew-up" confession which is obtained during such period of illegal detention can be excluded whether voluntary or not. It is essentially a court rule to supervise police conduct.

No contention is made in this case that the defendant was held for an unreasonable length of time. A confession does not become inadmissible as a "sew-up" confession merely because the state, prior to the confession, had information sufficient to sustain a charge. The question revolves solely on the point whether the delay was inordinate and the detention illegal. Neither of those factors is argued on this appeal.

We are satisfied that the confession was not coerced and the guilty pleas were the product of a voluntary and intelligent choice of the defendant. Under these circumstances, the defendant failed to meet the burden of proof to show that under *State v. Reppin* (1967), 35

Wis. 2d 377, 151 N. W. 2d 9, the confession should be set aside and the guilty pleas withdrawn to correct a manifest injustice.

*By the Court.*—Order affirmed.