**UNITED STATES of America,**
**Appellant,**

v.

**Timothy ROBERTS, Appellee.**

**No. 343, Docket 88–1267.**

United States Court of Appeals,
Second Circuit.

Argued Nov. 2, 1988.
Decided Feb. 16, 1989.

Thomas D. Anderson, Asst. U.S. Atty., Burlington, Vt. (George J. Terwilliger, III, U.S. Atty., Burlington, Vt., of counsel), for appellant.

Barry E. Griffith, Rutland, Vt., for appellee.

Before LUMBARD, WINTER, and MINER, Circuit Judges.

LUMBARD, Circuit Judge:

The United States appeals from an order of the District Court for the District of Vermont, Franklin S. Billings, *Judge,* granting defendant Timothy Roberts' motion to suppress certain incriminating statements and partially granting his motion to dismiss a superseding indictment in the ongoing criminal prosecution against him, 690 F.Supp. 1368. The government had entered into a plea agreement with Roberts providing for the dismissal of all charges against him except for three counts of arson, in exchange for his cooperation in the investigation by the United States Bureau of Alcohol, Tobacco and Firearms (BATF) and his agreement to testify in any proceedings involving the matters under investigation. The prosecution secured the superseding indictment on the allegation that Roberts had breached the plea agreement by shooting at his own vehicle in an attempt to qualify for the federal witness protection program. Finding that Roberts' Sixth Amendment right to counsel was not violated when officials of the BATF interrogated him about the shooting of the truck, we reverse.

The facts are undisputed for the purposes of this appeal. Roberts was arrested on October 13, 1987 by members of the Vermont State Police and the BATF for the attempted arson of a commercial building in White River Junction on October 13, 1987. The state police and the BATF had been cooperating in an investigation into the burnings of a number of barns in North Troy, Vermont when their undercover work led to Roberts' arrest. A single-count indictment was returned on November 5, 1987 charging Roberts with attempted arson under 18 U.S.C. § 844(i).

On December 8, 1987, Roberts entered into a plea agreement with the government under which Roberts agreed (1) to plead guilty to the arson charge contained in the first indictment (the burning of a building in White River Junction which housed the Allied Floors store); (2) to plead guilty to both counts of arson contained in a two-count information (presented to him with the proposed agreement) charging him with having burned barns owned by Wilfred Pigeon and Malcolm Standish in North Troy, Vermont on October 26, 1986 and December 6, 1986, respectively; (3) to cooperate "completely, candidly, and truthfully" with federal and Vermont State Police investigators by providing any information, documents and objects relating to any criminal activities, and to testify involving matters referred to in the agreement; and (4) to wear a recording device while communicating, under the government's direction, with William Standish, Malcolm Standish and Reginald Riendeau concerning the arsons of their barns. In return, the United States agreed not to charge Roberts with the arsons of Durwood Starr's barn on October 6, 1986 and of Reginald Riendeau's barn on June 23, 1984 or with conspiracy or mail fraud on any of the five arsons. The agreement further provided that the United States retained the right to terminate the agreement if it "determine[d] that [Roberts] has failed to comply with any provision of [the] agreement, made any false statement to investigators or attorneys of the United States, or willfully failed to disclose information" as required by the agreement.

Between December 8, 1987, when the agreement was signed, and February 15, 1988, Roberts cooperated with and substantially assisted the government. His recorded conversations with Reginald Riendeau

led to Riendeau's indictment for having hired Roberts to burn his barn.

On February 9, 1988, Roberts entered pleas of guilty to three counts of arson, as contemplated by the plea agreement, and agreed to surrender himself to the United States Marshall on February 16, pending sentencing.

On February 15, the day before he was to surrender, Roberts contacted the Vermont State Police and asked to speak to Detective Sergeant Richard Hall. Roberts excitedly told Hall that he had discovered two bullet holes in his truck during the previous three days, and he expressed concern for his safety and for that of his mother and sister. When he inspected the truck the next day, Hall found two bullet impact points and recovered one bullet from the ground near the truck. Later analysis showed the bullet to be of .22 caliber. Believing the threat to Roberts, as an informer, to be genuine, and believing Riendeau to be the one most likely to retaliate against Roberts, the United States moved to revoke Riendeau's bail. The motion was unsuccessful, but Riendeau's terms of release were severely restricted. Roberts surrendered himself on February 16, as agreed, and was incarcerated pending sentencing.

On March 4, 1988, Hall learned from a confidential source that Roberts himself had shot his truck on February 15. Hall met the informer on March 5, and was told that Roberts not only had shot his own truck, but had instructed the informer to go to Roberts' premises, retrieve the weapon and "get rid of it." The informer also told Hall where Roberts had procured the gun.

Based on this information, Hall and Special Agent Thomas Perret of the BATF obtained the consent of the owner of the premises where Roberts had been living prior to his incarceration and searched the barn. They discovered a .22 caliber Jen-nings semi-automatic pistol hidden between the interior and exterior walls of the barn. While at the premises, Hall and Perret were informed by one Armand Pion that Roberts had solicited him to shoot Roberts' truck and to shoot Roberts in the arm.

Hall and Perret then interviewed Roberts, without counsel, at the State Police barracks in St. Johnsbury, Vermont.[1] Prior to interrogating Roberts, Hall and Perret presented Roberts with a *Miranda* statement of rights form. Roberts asked why they were giving him a form at that time; the investigators replied that they had not advised Roberts of his rights in a long time and that they wanted to question him about "some old things and some new things." They did not specifically mention that one of the "new things" was the shooting of the truck. Roberts executed the form and the questioning proceeded.

Hall and Perret then asked Roberts whether he had shot his own truck. Roberts initially denied having done so; when the investigators confronted him with the pistol they had found in the barn, Roberts did not respond. At that point, Hall and Perret prepared to leave the barracks. Roberts then, according to Perret, asked, "What do you want me to say?", to which Perret testified he responded that Roberts could "tell the truth or he could say nothing at all." At that point, Roberts admitted that he had shot his own truck to increase his chances of entering the federal witness protection program.

The government terminated the plea agreement on March 11, 1988, considering Roberts' actions to have constituted a breach of his pledge to cooperate with the government. Thereafter, a superseding indictment was returned charging Roberts with four counts of arson,[2] 18 U.S.C. § 844(i), one count of attempted arson, 18 U.S.C. § 844(i), and one count of possession of a firearm while under indictment, 18

---

1. Roberts was incarcerated in the St. Johnsbury Community Correctional Center; Hall and Perret transported him to the police barracks for questioning.

2. These four counts of arson (Counts One through Four in the superseding indictment) correspond to the two counts to which Roberts agreed in the plea agreement to plead guilty and the two counts which the government agreed not to prosecute.

U.S.C. § 922(n). On April 18, 1988, Roberts moved to dismiss the superseding indictment, arguing that he had not breached the plea agreement and that the government therefore should be held to the agreement. He also moved, on April 25, 1988, to suppress his statements to the officers at the police barracks on March 5, contending that his statements were elicited in violation of his Fifth and Sixth Amendment rights.

The district court issued an order on June 23, 1988 granting Roberts' motion to suppress the statements and granting, in part, his motion to dismiss the superseding indictment, upholding only the charges of attempted arson and possession of a firearm while under indictment. In its subsequent opinion, the district court reasoned that Roberts' Sixth Amendment right to counsel had vested when he was charged in the original complaint and was still in force when he was interrogated regarding the truck-shooting incident. The court then concluded that, once Roberts had asserted his Sixth Amendment right to counsel, any police-initiated interrogation about either the originally charged offenses or unrelated offenses was prohibited, and Roberts could not validly have waived his right to counsel once he had asserted it. Judge Billings held that the existence of the plea agreement, and Roberts' waiver therein of his right to counsel when communicating with the government pursuant to the agreement, did not affect the continuing enforceability of Roberts' initial invocation of his Sixth Amendment right when he was later interrogated in a situation beyond that contemplated in the plea agreement.

The government argues that the district court erred in finding that Roberts' original assertion of his Sixth Amendment right to counsel attached to the interrogation regarding Roberts' alleged shooting of his truck, a subsequently-committed offense for which Roberts had not yet been charged, and, in the alternative, that whatever Sixth Amendment right Roberts may have had was waived when he entered into the plea agreement. His admission, therefore, should not have been excluded. We agree.

This case presents the single question of whether Roberts, while being accused of charges respecting which he had previously waived his right to counsel, could validly have waived his right to have an attorney present at a police-initiated interrogation session about an offense for which he had not yet been charged. We hold that his execution of a form waiving the rights of which he was informed under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), was a valid waiver of his Fifth Amendment right to counsel in connection with the police questioning regarding the shooting of his truck, an offense for which his Sixth Amendment right to counsel had not yet vested since Roberts had not yet been formally accused.

Roberts argues in effect that the prophylactic rule established by the Supreme Court in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), concerning the Fifth Amendment right to counsel, and subsequent Supreme Court decisions extending *Edwards* to certain Sixth Amendment situations and to situations involving questioning about separate offenses, requires that his admission be excluded. We believe that the *Edwards* rule has not been so broadened that it places a blanket exclusion on all postindictment interrogation about unrelated, as-yet uncharged offenses.

In *Edwards,* the Supreme Court held that a preindictment suspect who asserts his Fifth Amendment right to counsel during interrogation may not be questioned again outside the presence of counsel unless he initiates the meeting. The Court extended this bright-line rule to Sixth Amendment cases in *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), holding that the accused, after once having asserted his right to assistance of counsel, cannot validly waive that right in police-initiated questioning even with a validly presented and executed *Miranda* waiver form. Later, in *Arizona v. Roberson,* —— U.S. ——, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988), the Court, once again in a Fifth Amendment context, extended the *Edwards* bright line exclusion to bar police-

initiated preindictment interrogation concerning a separate offense of a suspect who has asserted his Fifth Amendment right to counsel in the original investigation.

The situation here is quite different from those covered in *Edwards, Jackson* and *Roberson.* Here, we are asked to extend the *Edwards* prophylactic rule to preclude the admission of evidence obtained from a suspect already under indictment, when that evidence relates to an offense other than the one for which the suspect already stands accused. Roberts would have us hold that, once an accused's Sixth Amendment right to counsel attaches, his Fifth Amendment rights become unwaivable in the context of a separate investigation. Such a conclusion comports with neither the letter nor the spirit of *Edwards* and its progeny.

In those cases, the essential distinction between the pre-accusation and post-accusation phases of the proceeding are retained. *Jackson* merely applied, in the Sixth Amendment context, the simple Fifth Amendment rule of *Edwards* against police-initiated interrogation of suspects who have asserted their Fifth Amendment right of counsel, barring the identical police-initiated interrogation after indictment. *Roberson* remained wholly within the Fifth Amendment context, stating that police-initiated interrogation of a preindictment suspect who had demanded counsel was repugnant no matter what was the focus of the police's inquiry. Roberts, however, would have us hold that once an accused has asserted his Sixth Amendment right to counsel, *Edwards* acts as a bar that will invalidate any waiver of the Fifth Amendment right to counsel in an investigation of a wholly new incident. It would thus be impossible for a suspect to waive his right to counsel and for questioning on a new offense to proceed if the accused had asserted his right to counsel at any earlier point in his dealings with the authorities.

We see no reason for such an extension of *Edwards.* When questioning began about new offenses that were not a part of the allegedly criminal activity that had re-

sulted in the indictment, the Fifth Amendment, rather than the Sixth Amendment, was at issue, and no waiver of Roberts' Sixth Amendment right to counsel was necessary for the questioning to proceed. Roberts has presented us with no authority for the proposition that waiver of the Fifth Amendment right is not possible once the Sixth Amendment right has been asserted in connection with a different offense.

Even if we were to accept Roberts' view that his Fifth Amendment right to counsel could not validly have been waived once his Sixth Amendment right had been asserted, we would reach the same conclusion on the finding that Roberts had indeed waived his Sixth Amendment rights, validly and on advice of counsel, before the police questioned him about the gunshot holes in his truck. When he entered into the plea agreement with the government, Roberts necessarily waived his Sixth Amendment right to counsel. All parties understood (and none now dispute) that Roberts, as part of his performance of his obligation to cooperate with the government, would meet with government investigators regularly and sometimes informally, more often than not outside presence of counsel. When Roberts voluntarily opened a dialogue with the government regarding threats to his safety and that of his family because of his continued cooperation with the arson investigations, it was foreseeable to Roberts that the government would investigate the nature and source of those threats as part of its duty under the plea agreement. When the government had reason to believe that Roberts might know more about the source of the threatening bullet holes than he had admitted, the government questioned him about the incident. It was only after the investigators determined that Roberts had shot his own truck that the focus of their efforts shifted from that of their continuing duty to aid in Roberts' cooperation under the plea agreement to that of investigators of a separate offense. Roberts therefore had already waived his Sixth Amendment right to counsel when the police initiated questioning about the bullet holes in his truck, and, when the government's investigation impli-

cated Roberts in a new offense, they complied in full with the Fifth Amendment protections required under *Miranda, supra.*

As we hold that Roberts' confession that he had shot his own truck was erroneously suppressed, the government may use that confession as proof that Roberts breached the plea agreement. Accordingly, the order of the district court is reversed to the extent that it suppressed Roberts' admission and dismissed counts One through Four of the superseding indictment.

REVERSED AND REMANDED.