STATE of Wisconsin, Plaintiff-Respondent,

v.

Paul McNEIL, Defendant-Appellant.

Supreme Court

*No. 89-0539-CR. Argued January 26, 1990.—Decided May 2, 1990.*

(Also reported in 454 N.W.2d 742.)

25

For the defendant-appellant there was a brief (in the court of appeals) by *Gary M. Luck* and *Luck & Rosenthal,* Milwaukee and oral argument by *Gary M. Luck.*

For the plaintiff-respondent the cause was argued by *David J. Becker,* assistant attorney general, with whom on the brief (in the court of appeals) was *Donald J. Hanaway,* attorney general.

STEINMETZ, J. The issue certified is whether an accused's request for or appearance with counsel at an initial appearance on a charged offense constitutes an invocation of his fifth amendment right to counsel that precludes police-initiated interrogation on unrelated,

uncharged offenses. The trial court answered "no" and we agree.

Other issues in the case include whether the state illegally delayed filing the murder charges to conduct further investigation so as to obtain a sew-up confession. The trial court answered "no." We do not believe the issue presented is consistent with the facts.

Another issue before us is whether the defendant's statements should have been suppressed because they were obtained in violation of the defendant's fifth amendment right to be silent. The trial court answered "no" and we agree.

The final issue raised is whether the trial court should have allowed the defendant to withdraw his guilty plea and granted him a new trial. The trial court answered "no" and we agree.

The case is before this court by certification from the court of appeals granted pursuant to Rule 809.61, Stats. Paul McNeil, the defendant-appellant, seeks review of a judgment of conviction entered on March 18, 1988. Racine county circuit court Judge Emmanuel J. Vuvunas entered judgments of convictions against the defendant for the crimes of party to second-degree murder, party to attempted first-degree murder, and party to armed burglary. The sentence imposed by the judge was an indeterminate term of not more than 20 years for the party to second-degree murder conviction, 20 years for the party to attempted first-degree murder, and 20 years for party to armed burglary, all counts to be consecutive to one another for a total of 60 years.

This matter was initiated by a felony warrant request by Sergeant Robert Stauss of the town of Caledonia Police Department of the Racine county district attorney's office. The complaint was issued on May 27,

1987, by the then Racine county District Attorney Gerald Ptacek.

The warrant was served on the defendant who was being held in the Milwaukee county jail on an unrelated armed robbery charge and was brought before a Racine county magistrate on June 4, 1987. A preliminary examination was held on June 11, 1987, and subsequently various motions including motions to suppress the defendant's statements were filed. Judge Vuvunas denied the motions to suppress after five hearings were held.

A postjudgment notice of motion and motion to withdraw the guilty plea were presented. The motion requested a withdrawal of the defendant's guilty plea as a result of a manifest injustice because the court had ruled improperly when it ruled in favor of the state and against the claim of ineffective assistance of counsel. McNeil argued that defense counsel was incompetent during the course of the hearings on suppression of statements because counsel did not bring to the court's attention the most recent case law and supporting facts dealing with defendant's situation.

On hearings on the motion to withdraw the guilty plea, Judge Vuvunas ruled that trial counsel had not been ineffective and that he was now considering the case law and record which may not have been available earlier. He stated that even if he had been aware of the case law at the time he made his original decision, he would have ruled the same way and allowed the defendant's statements to be admitted into evidence.

The development of this case begins on May 21, 1987, when two Milwaukee county deputies escorted the defendant back to Milwaukee from Omaha, Nebraska. They had taken defendant into custody on a criminal complaint and warrant charging him with an armed robbery arising out of an incident in the city of West Allis in

30

Milwaukee county. The following day, May 22, 1987, the defendant was brought before court commissioner Frank J. Liska, Jr. in Milwaukee county. Bail was set and the matter was scheduled for a preliminary examination. The defendant had an attorney with him in court at that time.

Later in the day on May 22, and again on May 24 and May 26, still in the custody of the Milwaukee authorities, the defendant was interrogated regarding the episode that was to provide the basis for the criminal charges in this Racine county prosecution. Those charges were made by the filing of a criminal complaint on May 27, 1987. An initial appearance on those charges was held on June 4, 1987, in Racine county pursuant to a writ.

The critical question that must be answered in resolving the issue of the admissibility of the defendant's statements is whether an accused who has requested counsel at his initial appearance has thereby invoked not only his sixth amendment right to counsel, but his fifth amendment right to counsel as well.

The defendant appeared at his initial appearance in Milwaukee county for the unrelated offense of robbery. There he was represented by an attorney from the public defender's office. The record does not reveal whether he requested counsel at his initial appearance, only that he appeared with counsel at that appearance.

Defendant contends that since he appeared with counsel at the initial appearance on the unrelated Milwaukee county charge which triggered his sixth amendment right to counsel, he could not be subject to any further interrogation by the authorities about any offenses, including the Racine county offenses charged in this case, unless he initiated further communication, exchanges, or conversations with the police pursuant to

*Edwards v. Arizona,* 451 U.S. 477 (1981). Under the *Edwards* rule, when a suspect invokes his fifth amendment right to counsel during a custodial investigation, no further interrogation may be commenced by the authorities until counsel has been made available to him, unless he himself initiates further communication, exchanges, or conversations with the police. *Id.* at 484–85.

The defendant contends that his appearance with counsel at the initial hearing on the Milwaukee county charges constituted an invocation of his sixth amendment right to counsel that under the fifth amendment *Edwards* rule precluded the police from initiating any further interrogation of him, including questioning regarding the unrelated Racine county crimes. He argues that because it was the police that initiated the further interrogation that produced his statements regarding the Racine county crimes, those statements should have been suppressed under the *Edwards* rule.

There are two distinct rights to counsel when a defendant is interrogated by the police. The first is the fifth amendment right to counsel recognized in *Miranda v. Arizona,* 384 U.S. 436, 470 (1966). That right applies whenever a defendant is subjected to custodial interrogation irrespective of whether or not he has been formally charged with the offense to which the interrogation relates. *Id.* at 471. That right to counsel is not directly conferred by the fifth amendment, but rather is a prophylactic rule designed to safeguard the privilege against self-incrimination that is directly conferred by the fifth amendment. *See Solem v. Stumes,* 465 U.S. 638, 644 n.4 (1984).

██

The other right to counsel potentially applicable at an interrogation is the guarantee of the assistance of counsel in criminal proceedings directly conferred on a defendant by the sixth amendment.[1] That right to counsel attaches only "at or after the time that judicial proceedings have been initiated against [the accused]—'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' " *Brewer v. Williams,* 430 U.S. 387, 398 (1977). Such right is only applicable to interrogation that occurs subsequent to the initiation of formal judicial proceedings relating to the charge about which the interrogation is concerned.

Although it was initially recognized only in the fifth amendment context, the *Edwards* rule also applies to an invocation of the sixth amendment right to counsel. Thus, the *Edwards* rule also applies whenever an accused invokes his sixth amendment right to counsel, not just when he invokes it during the course of custodial interrogation. The invocation of right to counsel at an initial appearance will therefore trigger the *Edwards* rule. *See Michigan v. Jackson,* 475 U.S. 625, 636 (1986).

---

[1]The Sixth Amendment to the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor and to have the Assistance of Counsel for his defence.

While the *Edwards* rule applies to both the fifth and sixth amendment rights to counsel, the scope of its application differs depending on which of the two rights is being invoked. In the fifth amendment context, an invocation of the right during custodial interrogation precludes further questioning on any offense, not just the one that was the subject of the interrogation. *Arizona v. Roberson,* 486 U.S. 675, 685 (1988) (distinguishing the sixth amendment right to counsel from the fifth amendment prophylactic right to counsel to protect against self-incrimination).

In contrast, an invocation of the sixth amendment right to counsel on one offense does not trigger the *Edwards* rule with respect to interrogation on other offenses, at least not those that have not been charged. As to the uncharged offenses, an accused has no sixth amendment right to counsel, so interrogation on those uncharged offenses cannot be deemed "in derrogation of [the] Sixth Amendment right invoked [by the accused] at his arraignment" on a charged offense. *People v. Buckles,* 155 Mich. App. 1, 399 N.W.2d 421, 423 (1986). Since there is no sixth amendment right to counsel on uncharged offenses, an invocation of that right at an initial appearance or arraignment on a charged offense does not bring the expanded scope of the fifth amendment *Edwards* rule into play with respect to interrogation on uncharged offenses. *See Moran v. Burbine,* 475 U.S. 412, 431 (1986); *Maine v. Molton,* 474 U.S. 159, 180 n.16 (1985).

The defendant cites a case from the Seventh Circuit Court of Appeals as indistinguishable. *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117, 123 (7th Cir. 1987), expressly held: "that individuals who invoke their

right to counsel at their arraignment are invoking both their Sixth Amendment and their Fifth Amendment rights." This court is not bound by the *Espinoza* holding as precedential value. *State v. Webster,* 114 Wis. 2d 418, 426 n.4, 338 N.W.2d 474 (1983).

Likewise, the United States Supreme Court has recently ruled on *Butler v. McKellar,* — U.S. —, 110 S.Ct 1212, 108 L.Ed.2d 347 (1990). The facts in *Butler* indicate that, unlike McNeil, the defendant invoked his fifth amendment right to counsel upon arrest on an unrelated assault and battery charge. The defendant then retained counsel who appeared with him at a bond hearing on the unrelated charge on August 31, 1980. The defendant was subsequently informed that he was a suspect in a murder. He was read his *Miranda* rights, stated he understood his rights and signed two waiver forms. The defendant was interrogated concerning the murder and confessed. At no time did he request counsel during this interrogation. The defendant was charged with the murder and convicted.

The issue before the United States Supreme Court in *Butler* concerns the retroactivity on collateral attack of *Roberson.* The *Butler* Court held that *Roberson* was not retroactive on collateral attack, and it affirmed Butler's conviction.

Although proponents of *Espinoza* and cases following the holding in *Espinoza* might interpret *Butler* as changing *Roberson* to affect an outcome on the certified issue now before us that is on all fours with *Espinoza,* we disagree. We continue to interpret *Roberson* to apply only to the invoked fifth amendment prophylactic protection of "having an attorney present to counteract the inherent pressures of custodial interrogation . . .." *Roberson,* 486 U.S. at 685.

We do not read *Butler* and *Roberson* as affecting a transmutation of the sixth amendment right to counsel into a fifth amendment right to counsel. We hold that a defendant does not invoke his or her fifth amendment right to counsel by invoking the sixth amendment right to counsel at an initial appearance.

The fifth amendment right to counsel recognized in *Miranda* is not one that attends a criminal suspect under all circumstances and in every situation. Rather, it attaches only when an accused is in custody, *United States v. Henry,* 447 U.S. 264, 273 n. 11 (1980), and subject to custodial interrogation. *Rhode Island v. Innis,* 446 U.S. 291, 198 (1980). An accused may well be in custody at an initial appearance, but he is not being subjected to interrogation. Thus, there is no fifth amendment right to counsel at an initial appearance. When an accused invokes his sixth amendment right to counsel at that appearance, there is no basis for concluding that he is invoking his fifth amendment right to counsel.

*Connecticut v. Barrett,* 479 U.S. 523, 528 (1987), which discusses the fifth amendment right to counsel, instructs that one should examine the issue by "reference to [the] prophylactic purpose" of *Miranda* and, therefore, of the *Edwards* rule. By doing this, one reaches the conclusion that a sixth amendment request for counsel at an initial appearance should not be deemed an invocation of the fifth amendment right to counsel that would trigger the *Edwards* rule. The *Edwards* rule is "designed to insulate the exercise of Fifth Amendment rights from the government 'compulsion, subtle or otherwise,' that 'operates on the individual to overcome free choice in producing a statement

36

after the privilege has been once invoked.' " *Barrett,* 479 U.S. at 528.

There might well be legitimate concern that a reinitiation of interrogation after a request for counsel at an interrogation session or in response to *Miranda* warnings would constitute "subtle compulsion" because it might lead a defendant to question whether the police really intend to honor his right to counsel. However, when an accused has not requested counsel in the context of custodial interrogation or in response to *Miranda* warnings pursuant to the fifth amendment, but rather invokes his sixth amendment right at his initial appearance on a criminal charge, it is difficult to see what "subtle compulsion" would exist if the police were to approach the defendant and seek to interrogate him on an unrelated crime after providing a full warning of his *Miranda* rights, including the right to counsel.

The defendant relies on language in *Jackson,* 475 U.S. at 633–34 n.7, for his position that a request for counsel at an initial appearance invokes the fifth amendment right to counsel. The proffered language from *Jackson* states:

> 'Although judges and lawyers may understand and appreciate the subtle distinctions between the Fifth and Sixth Amendment rights to counsel, the average person does not. When an accused requests an attorney, either before a police officer or a magistrate, he does not know which constitutional right he is invoking; he therefore should not be expected to articulate exactly why or for what purposes he is seeking counsel. It makes little sense to afford relief from further interrogation to a defendant who asks a police officer for an attorney, but permit further interrogation to a defendant who makes an identical request to a judge. The simple fact that defendant has

requested an attorney indicates that he does not believe that he is sufficiently capable of dealing with his adversaries singlehandedly.'

Defendant's reliance is misplaced. In that passage, the Supreme Court is quoting a passage from the Michigan Supreme Court's decision in *People v. Bladel,* 421 Mich. 39, 63-64, 365 N.W.2d 56, 67 (1984). However, the Michigan Supreme Court in its decision expressly held that a defendant who requests counsel at an arraignment only invokes the sixth amendment right to counsel and does not thereby invoke his fifth amendment right to counsel. *Bladel,* 421 Mich. at 52-53, 365 N.W.2d at 62; *see also Jackson,* 475 U.S. at 630 n.4 (noting that the Michigan court did not rely on the fifth amendment and expressly refusing to comment on the Michigan court's fifth amendment analysis).

The language in *Jackson,* which requires a broad interpretation to be accorded a defendant's invocation of his sixth amendment right to counsel, does not mean that the court must transmute the invocation of that right into an invocation of another right, the fifth amendment right to counsel. Rather, in context, the *Jackson* decision used the quoted passage from *Bladel* in an attempt to assess how broadly to interpret the defendant's invocation of only his sixth amendment right to counsel. The *Jackson* court refused to accept the state's argument that the defendant's sixth amendment request for counsel in *Bladel* was a limited invocation applying only to representation in formal legal proceedings. Instead, the Court stated that "the settled approach to questions of waiver" required a broad interpretation be placed on the defendant's request. *Jackson,* 475 U.S. at 633.[2] The breadth of one's invocation of the sixth

[2]The facts in *Bladel* are distinguishable from those in the

38

amendment right to counsel is clearly not at issue in the case now before us. At issue is whether invocation of the sixth amendment right to counsel automatically transforms into an invocation of the fifth amendment right to counsel.

In *Barrett,* 479 U.S. at 529, the Supreme Court analyzed the defendant's unambiguous invocation of his fifth amendment right to counsel at a custodial interrogation and the scope of his invocation and gave it the broadest possible interpretation on consideration of waiver. The *Barrett* Court concluded that a fifth amendment request for counsel at a custodial interrogation before defendant would give police a written statement did not prohibit the police from obtaining and using at trial oral statements volunteered by the defendant. The court rejected the defendant's argument that "broad effect" must be given "to requests for counsel that [are] less than all-inclusive." The Supreme Court stated:

> Barrett made clear his intentions [he was willing to give an oral statement, but not a written statement in the absence of counsel] and they were honored by police. To conclude that respondent invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of respondent's statement.

479 U.S. at 529–30. (Footnote omitted.)

The "ordinary meaning" of a defendant's request for counsel at an initial appearance is only that he is invoking his sixth amendment right to counsel in the pending

case now before us in that at all times *Bladel* concerned only three counts of first-degree premeditated murder upon which Bladel was arraigned.

prosecution. When a defendant invokes his sixth amendment right to counsel in a pending prosecution by requesting or accepting counsel at the initial appearance, it need not be viewed as an invocation of the fifth amendment right precluding interrogation on unrelated crimes any more than the limited invocation of the fifth amendment right to counsel in *Barrett* needed to be viewed as an invocation of the full fifth amendment right.

Other jurisdictions agree with our holding which rejects the *Espinoza* rationale and keeps the prophylactic protections provided under the fifth amendment right to counsel separate from the sixth amendment right to counsel. The Michigan Supreme Court in *People v. Crusoe,* 433 Mich. 666, 449 N.W.2d 641, 651, 1989 Mich. refused to extend the *Roberson* rationale beyond its express fifth amendment application to include extension of the sixth amendment invocation of right to counsel to shield the defendant from postarraignment interrogations on unrelated charges. In so holding, the *Crusoe* court expressly rejected and reversed the court of appeals decision which adopted the analysis of *Espinoza:* "We find no authority for the adoption of a rule that a defendant's request for court appointed counsel at an arraignment invalidates a waiver of a defendant's right to counsel per se under *Miranda* during a subsequent police-initiated interrogation concerning a different and unrelated offense." (Footnote omitted.) (Citing *United States v. Roberts,* 869 F.2d 70, 74 (2d Cir. 1989)).

The Second District Court of Appeals in *United States v. Roberts,* 869 F.2d 70, 74 (2d Cir. 1989), asserted that the situation before it was "quite different from [that] of *Edwards, Jackson* and *Roberson.*" That court said: "Roberts would have us hold that, once an accused's Sixth Amendment right to counsel attaches,

his Fifth Amendment rights become unwaivable in the context of a separate investigation. Such a conclusion comports with neither the letter nor the spirit of *Edwards* and its progeny." *Id.*

The court in *State v. Stewart,* 113 Wash. 2d 462, 780 P.2d 844, 853 (1989) offered an identical conclusion:

> In the end, we hold Stewart's Sixth Amendment right to counsel did not attach on these burglary charges until months after his confessions. He did not invoke his Fifth Amendment right to counsel when he requested an attorney at an arraignment on an unrelated charge. The Fifth Amendment right to counsel exists solely to guard against coercive, and therefore unreliable, confessions obtained during in-custody interrogation, which was not occurring at the time Stewart requested counsel. Subsequently, prior to giving his confession, Stewart was given *Miranda* warnings and did not invoke his Fifth Amendment right at that time. There has been no showing of confusion on the part of the defendant, nor trickery on the part of the State. Extension of the *Edwards* rule to this fact scenario would constitute a misapplication of that prophylactic rule.

The defendant next complains that there was an unreasonably long detention before his initial appearance on the Racine county charges that requires suppression under the rule in *Phillips v. State,* 29 Wis. 2d 521, 534, 139 N.W.2d 41 (1966). Regarding the nature of the *Phillips* rule and what is ultimately at issue when a *Phillips* claim is raised, this court has stated:

> The suppression of sew-up confessions is based on the rule that a defendant who has not yet been charged may be taken into custody and interrogated only for a period reasonably necessary for the State

to decide whether to release him or to make a formal complaint. A detention for any longer period violates due process and renders any confession obtained during the unreasonable period inadmissible. *Briggs v. State,* 76 Wis. 2d 313, 323, 251 N.W.2d 12 (1977); *Klonowski v. State,* 68 Wis. 2d 604, 229 N.W.2d 637 (1975); *Phillips v. State,* 29 Wis. 2d 521, 534-5, 139 N.W.2d 41 (1966). However, 'A confession does not become inadmissible as a "sew-up" confession merely because the state, prior to the confession, had information sufficient to sustain a charge. The question revolves solely on the point whether the delay was inordinate and the detention illegal.' *Briggs v. State, supra* at 324; Krueger v. State, 53 Wis. 2d 345, 357, 192 N.W.2d 880 (1972).

*State v. Benoit,* 83 Wis. 2d 389, 404-05, 265 N.W.2d 298 (1978).

We hold that the facts of this case are not consistent with a conclusion that the *Phillips* rule was violated. McNeil promptly appeared before a judicial court commissioner on the Milwaukee county armed robbery charge for which he had been arrested and for which he was in custody. The timely appearance rendered his subsequent detention in the Milwaukee county jail lawful. The statements regarding his conduct in Racine county were given while he was in lawful custody in Milwaukee county.

The defendant's argument on this issue then seems to switch from the due process concerns of the *Phillips* rule to an examination of a possible sixth amendment violation under *State v. Lale,* 141 Wis. 2d 480, 415 N.W.2d 847 (Ct. App. 1987). Here, McNeil suggests that the state deliberately delayed filing the Caledonia murder charges as a pretext to allow further investigation of these unfiled charges without fear of violating his sixth amendment right to counsel. This is a direct reference to

principles discussed in *Lale* wherein the court of appeals adopted as law combined interpretations of *Moulton,* 474 U.S. 159, and *Burbine,* 475 U.S. 412, which state that a defendant's sixth amendment right to counsel is not involved when the police obtain incriminating statements on unfiled charges that are unrelated to a filed charge.

The court of appeals in *Lale* noted the existence of a possible exception to this rule which the defendant argues is applicable here. The exception states that a possible violation of the sixth amendment may occur when "the government formally files on some charges but delays filing of another charge as a pretext to facilitate investigation of that unfiled charge without being hampered by the sixth amendment . . .." *Lale,* 141 Wis. 2d at 489. The court of appeals suggested that under such circumstances "bad faith may exist." *Id.*

Here, on December 14, 1987, at the defendant's hearing on the motion to suppress the confession, the trial court on the facts presented expressly refused to find any bad faith in how the authorities handled this case. The court specifically stated:

> I don't think there has been any showing that there was conduct in bad faith being done here. I think the officers who were going through this in a case which involves a defendant who was involved in lots of different problems. Involved in several different investigations. Certainly from the testimony that's come through here, I don't think there's been any showing like that at all.

The trial court's findings of fact on the bad faith issue will not be overturned unless clearly erroneous. *State v. Owens,* 148 Wis. 2d 922, 929, 436 N.W.2d 869 (1989). Here, the defendant has offered no showing to

43

support a determination that the trial court's findings were clearly erroneous. Thus, the trial court's refusal to find bad faith removes this case from the *Lale* exception, and we agree with the trial court that McNeil's sixth amendment right to counsel under the *Lale* theory has not been violated.

The defendant next claims his statements should have been suppressed because the police did not "scrupulously honor" his request to remain silent as they are required to do under the United States Supreme Court's decision in *Michigan v. Mosley,* 423 U.S. 96 (1975). Determining whether the right to silence has been scrupulously honored requires the application of constitutional principles to the facts of the case and is subject to independent appellate review.

There are five factors that are to be considered in deciding whether an invocation of the right to silence has been "scrupulously honored." Those factors as adopted from *Mosley,* 423 U.S. at 104–05 and as enumerated in *State v. Hartwig,* 123 Wis. 2d 278, 284, 366 N.W.2d 866 (1985), are:

> (1) The original interrogation was promptly terminated. (2) The interrogation was resumed only after the passage of a significant period of time . . .. (3) The suspect was given complete *Miranda* warnings at the outset of the second interrogation. (4) A different officer resumed the questioning. (5) The second interrogation was limited to a crime that was not the subject of the earlier interrogation.

The factors are not to be woodenly applied. *Id.* at 284–85. They provide a framework of analysis to aid in determining the essential issue of whether the defendant's right to silence was scrupulously honored. *Id.*

44

All five factors are satisfied in this case. The defendant initially invoked his right to silence and the interrogation was terminated. The questioning was resumed after the passage of a significant period of time, either one or two days depending on the version accepted, the defendant's or the police. *Cf. State v. Turner,* 136 Wis. 2d 333, 357, 401 N.W.2d 827 (1987) (periods of 20 and 24 hours have been deemed significant time spans for *Mosley* purposes).

Prior to the second and subsequent interrogations, the defendant was given a full and complete set of *Miranda* warnings.[3] The officers conducting those interrogations made sure the defendant understood each of the rights about which the warnings advised the defendant and secured an express waiver of them.

A different officer, Officer Butts, resumed the questioning at the second interrogation. The defendant's initial invocations of his right to silence were made when Detective Smukowski attempted to interrogate him. The subsequent interrogations were conducted by different officers. The second and subsequent interrogations were restricted to a crime that had not been the subject of the initial interrogation.

Prior to his arrest and return to Milwaukee, the defendant's girlfriend had told Officer Butts who initiated the second interrogation after the defendant invoked his right to silence that he (the defendant) "wanted to talk to [the officer] when he got back to Milwaukee." With this indication of a desire to talk to the interrogating officer, it does not appear that McNeil's previously invoked right to silence was not

---

[3]The advice given by the dissent was fulfilled by the officers in this case and served as part of the basis for the majority opinion.

45

scrupulously honored when that officer approached him and, after giving *Miranda* warnings, determined that the defendant was willing to talk to him about his part in the Racine county town of Caledonia crimes.

The defendant immediately raised to the police the subject of the Caledonia incident that provided the basis for the charges in this case. Notwithstanding his initial invocation of his right to silence regarding the West Allis case when he was interrogated in Omaha, the defendant affirmatively wanted to speak to the police about the Caledonia crime at issue in this case. Under the circumstances, there is no basis for finding that his right to silence was not scrupulously honored.

The defendant also argues that he should be allowed to withdraw his guilty plea and should be granted a new trial. He bases his request on the theory of ineffective assistance of counsel. The ineffective assistance of counsel argument, which was raised in McNeil's notice of motion and motion to withdraw the guilty plea, was based on trial counsel's failure to originally brief and argue the *Espinoza* case on pretrial motions to suppress evidence.

A hearing was held on the motion to withdraw the guilty plea at which the *Espinoza* case was argued. Exhibits were also accepted into evidence which established that the defendant had been before a Milwaukee county magistrate in the morning hours of May 22, 1987, on the Milwaukee robbery charges and that he was represented by a state public defender at that time. In relevant part, the trial court's decision on the motion stated:

> The Court having heard testimony and having read the law presented by the parties makes the following Findings of Fact:

46

> That defense counsel's performance was not
> deficient . . ..
>
> The Court, after looking at the whole record,
> finds that its decision on motions to suppress would
> have been the same even if that case would have been
> argued, as there are no Wisconsin cases upon which
> the Court could have relied. Therefore, the motion of
> the defendant is denied.

In briefs reviewed by this court, McNeil states that
his ineffective assistance of counsel argument is made
moot by the trial court's hearing and decision on the
issue. We agree. The argument was made on reliance of
case law that was not and is not precedent in the state of
Wisconsin. McNeil's defense was therefore not
prejudiced by trial counsel's failure to expressly argue
*Espinoza.*

McNeil then apparently changes his argument on
brief on this issue to assert that the defendant's sole
basis for entering a no contest plea was the trial court's
denial of his suppression motion. He argues that the
denial of his motion violated his constitutional rights
and therefore justifies reversal of his conviction and a
new trial. This amounts to an argument that the trial
court committed prejudicial error by denying the
motion. Because we hold against McNeil on all of the
issues presented in this case and because a conclusion
that the trial court committed prejudicial error depends
upon our holdings here, we hold that the trial court did
not commit prejudicial error when it denied the suppres-
sion motion.

*By the Court.*—The order of the Racine county cir-
cuit court is affirmed.

CHIEF JUSTICE HEFFERNAN (dissenting). The majority concludes that an accused who requests counsel at an initial appearance and remains in continuous custody has not invoked the fifth amendment right to counsel which precludes police-initiated interrogation on unrelated, uncharged offenses. I disagree.

The majority states that the issue is whether invocation of the sixth amendment right to counsel automatically transforms into an invocation of the fifth amendment right to counsel. (Majority op. at p. 37.) The fifth amendment protection against self-incrimination provides the right to counsel at custodial interrogations, irrespective of whether a defendant has been formally charged or not. *Miranda v. Arizona,* 384 U.S. 436 (1966), and *Arizona v. Roberson,* 486 U.S. 675 (1988). Hence, the issue in this case is whether the defendant invoked his fifth amendment right to counsel when he requested assistance of counsel at an initial appearance instead of while being interrogated afterwards.

I am persuaded that the reasoning of the Seventh Circuit Court of Appeals in *United States ex rel. Espinoza v. Fairman,* 813 F.2d 117 (7th Cir. 1987), *cert. denied, Fairman v. Espinoza,* 483 U.S. 1010 (1987), is correct and should be followed by this court. *Espinoza* holds that, when a defendant requests[1] an attorney at an initial appearance and remains in custody, the court should presume that the defendant has invoked his fifth amendment right to counsel and police-initiated interro-

---

[1] In *Espinoza,* the defendant accepted the appointment of counsel, but did not specifically request counsel. The *Espinoza* court concluded that the defendant's unqualified acceptance of counsel at his arraignment was equivalent to a request for counsel and that it was not necessary for the defendant to specifically request counsel in order to invoke this right. 813 F.2d at 123.

gation is thereafter prohibited on any crime. *See Edwards v. Arizona,* 451 U.S. 477 (1981), and *Arizona v. Roberson,* 486 U.S. 675 (1988).

The majority rejects the Seventh Circuit's approach by distinguishing between a defendant who makes a request for assistance of counsel to a police officer while subject to a custodial interrogation and a defendant who makes a request for assistance of counsel to a magistrate and thereafter remains in continuous custody. The majority asserts that, while a defendant is in custody at an initial appearance, he is not being interrogated. Because the defendant is not being interrogated when he makes his request for an attorney, the majority leaps to the conclusion that there is no danger of compelled testimony and, therefore, the fifth amendment right to counsel which arises from the protection against self-incrimination is not implicated. The majority misreads the holdings of *Miranda v. Arizona, supra,* and *Edwards v. Arizona, supra.*

*Miranda* established that the fifth and fourteenth amendments require that, prior to any custodial interrogation, defendants be informed of their right to remain silent and their right to have counsel present "during custodial interrogation." *See Edwards,* 451 U.S. at 481–482. This does not mean that the *request* for counsel must be made "during custodial interrogation." In *Edwards v. Arizona,* the Supreme Court established a bright-line rule that, if a defendant requests counsel while in custody, police-initiated interrogation must cease until an attorney is present. *Edwards* added protection to prevent police from badgering a defendant into waiving previously asserted *Miranda* rights. *Oregon v. Bradshaw,* 462 U.S. 1039, 1044 (1983). Nowhere does *Edwards* or any of its progeny indicate accuseds must assert their *Miranda* right to counsel while they are

49

being interrogated. The request must be made while the defendant is in custody, prior to, or during, an interrogation.

It is apparent that there is danger of "subtle compulsion" when a defendant requests the assistance of an attorney at an initial appearance and is nevertheless subjected to further interrogation while custody continues. Whether a request for an attorney is made to a police officer or to a judge, whether in the jail or during an initial appearance, the dangers of the inherent pressure of custodial interrogation when not having an attorney present are the same. Just as the *Edwards* protection is not dependent upon the subject matter of the interrogation, neither is this protection dependent upon whether the request for assistance of counsel is made to a police officer while in custody or to a magistrate at an initial appearance before the defendant is interrogated.

Finally, I disagree with the majority that recent United States Supreme Court decisions provide support for its position. To the contrary, recent Supreme Court decisions support the Seventh Circuit Court of Appeals' decision in *Espinoza.* First, in *Arizona v. Roberson,* 486 U.S. 675 (1988), the Court resolved a conflict among the circuits and state courts, accepting the position taken by the Seventh Circuit in *Espinoza,* 486 U.S. at 679, n.3. The *Roberson* court held that, when a suspect requests counsel, the fifth amendment bars police-initiated interrogation on any crime, even one which was not the subject of the original interrogation. Recently, in *Butler v. McKellar,* — U.S. —, 110 S.Ct 1212, 108 L.Ed.2d 347 (1990) (formerly reported as *Butler v. Aiken),* the Supreme Court held that *Roberson* could not be applied retroactively in cases on collateral review and, for that reason, the particular defendant could not reap the benefit of the rationale of the *Espinoza* court. The issue

raised before the Court of Appeals in *Butler* was whether *Espinoza* required the police, during continuous custody, to refrain from all further questioning on any offense once an accused invokes his right to counsel. In resolving this issue, the Fourth Circuit Court of Appeals rejected the Seventh Circuit's holding in *Espinoza. Butler v. Aiken,* 846 F.2d 255 (4th Cir. 1988). After the Supreme Court issued its decision in *Roberson,* the Fourth Circuit Court of Appeals, on defendant's petition for rehearing, acknowledged that its decision, rejecting the *Espinoza* rationale, was doubtful but that the defendant was not entitled to the retroactive benefit of *Roberson.* 864 F.2d 24, 25 (4th Cir. 1988), *reh'g denied.* The Supreme Court agreed that Butler was not entitled to a retroactive application of *Roberson.* The court noted the discrepancy between the Seventh Circuit and the Fourth Circuit as evidence that the outcome in *Roberson* was not clear from the earlier holding in *Edwards* and therefore constituted a "new rule," hence, not calling for retroactive application. While the Supreme Court limited its holding to the retroactive application of *Roberson,* its approval of *Espinoza* is significant. I conclude that the *Espinoza* court's analysis of the fifth amendment right to counsel is correct and implicitly has been approved by the United States Supreme Court. Therefore, law enforcement officers may be well advised to comply with *Miranda-Edwards* standards whenever a suspect is interrogated under the circumstances here.[2] Reliance on

[2]I would like to clarify that our advice was not followed by these officers and does not serve as part of the majority's opinion. The majority misinterprets *Miranda* and its progeny. It is true that the officers in this case gave *Miranda* warnings to the defendant before they interrogated him and after he invoked his fifth amendment right to counsel by requesting an attorney at his initial appearance. *Miranda,* however, stands for more than the

51

the majority's view of what constitutes a constitutionally antiseptic confession may result in the suppression of crucial evidence. It would appear to this writer to be prudent to follow *Espinoza* by assuming that defendants who request assistance of counsel at an initial appearance and remain in custody have thereby invoked their fifth amendment right to counsel, and police-initiated interrogation is thereafter prohibited in respect to any crime unless the suspect waives his right to counsel.

I respectfully dissent and would reverse the trial court's judgment of conviction.

I am authorized to state that Justice Shirley S. Abrahamson and Justice William A. Bablitch join in this dissent.

prophylactic rule that requires law enforcement officers to inform defendants of their right to counsel. *Miranda* recognized the already existing fifth amendment right to have counsel present at custodial interrogations. The fifth amendment right to counsel, as interpreted in *Edwards,* requires that police-initiated interrogation cease with respect to any crime once the defendant has invoked that right. Accordingly, it was not enough for the police officers in this case to read the defendant his *Miranda* rights again. The fifth amendment requires that police-initiated interrogation must cease.